# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4018

_____

United States of America,                    *
                                              *
          Appellee,                    *
                                              *    Appeal from the United States
      v.                                    *    District Court for the
                                              *    District of Minnesota.
Joseph Jonquil Oates,                         *
                                              *
          Appellant.                   *

_____

Submitted:  September 15, 2005
Filed:  November 3, 2005

_____

Before LOKEN, Chief Judge, BYE and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

After Joseph Jonquil Oates pleaded guilty to credit card fraud and identity theft, the district court[1] sentenced him to forty-one months of imprisonment. Oates appeals contending the district court erred in calculating his sentence under the United States Sentencing Guidelines (U.S.S.G.). Oates also raises constitutional challenges to his sentence under United States v. Blakely, 524 U.S. 296 (2004), and United States v. Booker, 125 S. Ct. 738 (2005). We affirm.

---

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

I

A federal grand jury indicted Oates on two counts of identity theft in violation of 18 U.S.C. § 1028(a) and one count of credit card fraud in violation of 18 U.S.C. § 1029(a). Oates used another's social security number to obtain a business credit card account in the name of "U.S. Government International Concierge" and then charged $41,330.09 for his own personal use to the credit card account.

Pursuant to a plea agreement, Oates agreed he was guilty of credit card fraud and one count of identity theft. The agreement stipulated to a base offense level of six, plus a six-level increase for the amount of loss under U.S.S.G. § 2B1.1(b)(1). The agreement precluded Oates from withdrawing his plea if the district court applied enhancements not contemplated by the parties. At the plea hearing, the district court told Oates the identity theft count carried a statutory maximum of fifteen years, while the credit card count carried a statutory maximum of ten years.

The district court asked the probation office to prepare a pre-sentence investigation report (PSR) for use at sentencing. The PSR's recommendations differed from the sentence contemplated by the parties in two respects. First, the PSR indicated the base offense level should be seven rather than six because Oates had a prior conviction for credit card fraud. The prior conviction doubled the statutory maximum for the credit card fraud count, see 18 U.S.C. § 1029(c)(1)(B) ("[The penalty for] an offense that occurs after a conviction for another offense under this section [is] imprisonment for not more than 20 years"), and consequently increased the base offense level, see U.S.S.G. § 2B1.1(a) (requiring a base offense level of seven when the "offense of conviction has a statutory maximum term of imprisonment of 20 years or more.").

Second, the PSR recommended a two-level enhancement under U.S.S.G. § 2B1.1(b)(9)(C)(i) (2003)[2] for "the unauthorized . . . use of any means of identification unlawfully to produce or obtain any other means of identification." The PSR recommended this enhancement because Oates unlawfully used the victim's social security number (a means of identification) to obtain the business credit card account number (another means of identification).

The sentencing in this case took place after <u>Blakely</u> and before <u>Booker</u>. Prior to sentencing, Oates's counsel filed a "Defendant's Position with Regard to Sentencing and Motion for a Downward Departure" referencing Oates's rights under <u>Blakely</u>:

> At a time when the laws regarding sentencing are changing, almost weekly, it is difficult to know what law will be in effect at the time of sentencing. In order to achieve some predictability and stability on these shifting sands, Mr. Oates elects (if such an election is allowed) to be sentenced under the U.S. Sentencing Guidelines. However, he wishes to preserve any appeal issues he may have under <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004)[.]

At the sentencing hearing, Oates did not object to the PSR's factual findings, which included the fact Oates used the victim's social security number to obtain a credit card account number for a fictitious business, the amount of loss, and the fact Oates's fraudulent activity was reflected on the victim's credit report. Marc St. Louis, the victim, included a victim impact statement explaining how his personal credit had been affected and the steps he took to "stay ahead of Mr. Oates' calculating behavior" and prevent his identity from being linked to the business credit card account number.

---

[2]The 2003 version of the Guidelines applied to Oates's sentence. Except where indicated, all references to the Guidelines will be to the 2003 version of the Guidelines Manual. The means-of-identification enhancement at issue is now found at U.S.S.G. § 2B1.1(b)(10)(C)(i).

The district court treated the guidelines as mandatory. It also adopted the two PSR recommendations which differed from the parties' plea agreement. This resulted in a final offense level of thirteen – three levels higher than the parties had contemplated. Oates had a criminal history category of VI, resulting in a sentencing range of thirty-three to forty-one months. The district court sentenced Oates to forty-one months imprisonment.

Oates timely appealed contending the district court violated his Fifth Amendment due process rights by failing to inform him of the "relevant statutory maximum" at his plea hearing. Oates contends the "relevant statutory maximum" under Booker and Blakely is thirty months, or the top end of the guideline range contemplated by the parties in the plea agreement. Oates further contends the "means of identification" enhancement does not apply to his conduct, and the base offense level of seven should not apply because he was neither indicted on a twenty-year offense nor informed of such at his change of plea hearing.

II

A.    Means of Identification

We first address whether the district court erred in interpreting and applying the two-level "means of identification" enhancement. We review this claim de novo. United States v. Paine, 407 F.3d 958, 963 (8th Cir. 2005).

Oates first contends the district court misapplied the enhancement by using the wrong definition of "means of identification." The 2003 Guidelines Manual states "'means of identification' has the meaning given that term in 18 U.S.C. § 1028*(d)(4)*." U.S.S.G. § 2B1.1, cmt. n.8(A) (emphasis supplied). Notwithstanding this directive, the district court applied the statutory definition of "means of identification" found at 18 U.S.C. § 1028*(d)(7)*. The district court did so because an April 2003

reorganization of § 1028 moved the statutory definition for "means of identification" from subsection (d)(4) to (d)(7).  The Guidelines did not reflect the definition's new statutory home until 2004.  See U.S.S.G. § 2B1.1 cmt. n.9(A) (2004).  Oates contends the district court was required to apply the 2003 Guidelines literally and define "means of identification" using the statutory definition found at § 1028(d)(4), which happens to define a "false identification document."  We disagree.

The Guidelines incorporated the statutory definition of "means of identification" found at § 1028(d)(4) prior to the definition's migration to § 1028(d)(7).  As a consequence, the 2003 Guidelines Manual preserved the original definition notwithstanding the failure to correctly cross-reference the statute after its reorganization:

> Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. . . . Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications by the statute so taken unless it does so by express intent.

United States v. Griner, 358 F.3d 979, 982 (8th Cir. 2004) (quoting Hassett v. Welch, 303 U.S. 303, 314 (1938)) (in turn quoting 2 Sutherland on Statutory Construction, 787-88 (2d ed. 1904)).  Griner applied this "well-settled canon" of statutory construction after Congress failed to correct a statutory cross-reference between 18 U.S.C. §§ 3583(d) and 3563(b) when the latter statute was reorganized.  See Griner, 358 F.3d at 982.  We believe this rule applies equally when the Guidelines adopt particular provisions of a statute by specific and descriptive reference, and the statute is thereafter reorganized.

Oates next contends the "means of identification" enhancement does not apply to him because the credit card account number he obtained was in the name of a

fictitious business.  He concedes he used one "means of identification" (the victim's social security number) unlawfully to obtain another "means of identification" (the credit card account number), but claims the credit card account number was not a means of identifying "an actual (i.e., not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct)," U.S.S.G. § 2B1.1 cmt. n.8(A), and therefore should not trigger the two-level enhancement.  We disagree.

Although the credit card account number was issued in the name of a fictitious business, it was still a means of identifying an actual individual.  It is undisputed Oates's fraudulent activity was reflected on the victim's credit report, and the victim had to take steps to protect his identity from being linked to the fictitious business's credit card account number.  The "nature of the harm" meant to be targeted by this enhancement is, in part, "that which results from using someone's identifying information to establish new credit."  United States v. Williams, 355 F.3d 893, 900 (6th Cir. 2003).  When an actual individual's social security number is paired with a fictitious name on a subsequently obtained means of identification, it does not necessarily "sever the ties linking the victims and the Social Security numbers." United States v. Melendrez, 389 F.3d 829, 836 (9th Cir. 2004).  In this case, Oates's use of a fictitious business name on the credit account did not sever the ties linking the account to the victim.  The account still directly affected the victim's individual credit, and thus was a means of identifying an actual individual.  Under these circumstances, the district court correctly included the enhancement in its Guideline calculations.

B.    Blakely/Booker

We do our best to summarize Oates's claim under Blakely and Booker. Essentially, we understand Oates to argue a district court, in the period of time between Blakely and Booker, violated the Fifth Amendment if it a) failed to advise

a defendant at the plea hearing of the "relevant statutory maximum" (i.e., the guideline range as calculated without enhancements based on judge-found facts), and then b) sentenced a defendant in excess of that range at the time of sentencing. We know this to be wrong for at least two reasons.

First, to the extent <u>Blakely</u> may have modified our understanding of what constitutes a "relevant statutory maximum," its holding did not apply to the federal sentencing scheme until the Supreme Court so held in <u>Booker</u>. Between <u>Blakely</u> and <u>Booker</u>, then, district courts were not obligated to advise defendants any differently for purposes of Rule 11 of the Rules of Criminal Procedure than they had before <u>Blakely</u>.

Second, the remedy chosen by the Supreme Court to fix the <u>Blakely</u> Sixth Amendment problem was to render the Guidelines advisory rather than mandatory. Importantly, the remedy was not to adopt a different "relevant statutory maximum" for sentencing purposes. <u>See</u> <u>United States v. Pirani</u>, 406 F.3d 543, 548 (8th Cir. 2005) (discussing the impact of <u>Booker</u>). The "relevant statutory maximum" for any given offense remains the same as it always was, that is, the "actual" statutory maximum set forth in the United States Code. As a consequence, neither <u>Blakely</u> nor <u>Booker</u> require a district court to advise a defendant of anything other than the actual statutory maximum at a plea hearing.[3]

In this case, the only sentencing error committed by the district court under <u>Blakely</u> and <u>Booker</u> was to treat the guidelines as mandatory rather than advisory. The government urges us to review this claim for plain error, contending Oates

---

[3]Oates concedes any error the district court committed in failing to advise him of the twenty-year statutory maximum on the credit card fraud count was harmless because the forty-one month sentence Oates received was less than the ten-year maximum of which Oates received notice. <u>See, e.g.</u>, <u>United States v. Osment</u>, 13 F.3d 1240, 1243 (8th Cir. 1994).

elected "to be sentenced under the U.S. Sentencing Guidelines" and this election waived his right to be sentenced under an advisory guideline system. We disagree.

Oates's election to be sentenced under the Guidelines was immediately followed by the statement he "wishes to preserve any appeal issues he may have under Blakely v. Washington, 124 S. Ct. 2531 (2004)." This was not, as the government contends, an attempt to have it both ways. The election to be sentenced under the Guidelines was clearly qualified by the statement immediately following it, by which Oates preserved a challenge to the district court's application of mandatory guidelines. See Pirani, 406 F.3d at 549 (recognizing a Booker error is preserved if the defendant below argued a Blakely error). Because Oates preserved the issue, we review the claim for harmless error rather than for plain error.

Under the harmless error standard as applied to this case, the burden is upon the government "to establish that we do not have 'grave doubt' as to whether the error substantially influenced the outcome of the proceedings." United States v. Haidley, 400 F.3d 642, 645 (8th Cir. 2005) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). Nothing in this record gives us grave doubt Oates may have received a shorter sentence under an advisory guideline regime. Oates's guideline range was thirty-three to forty-one months. The district court sentenced Oates to forty-one months, leaving unused all of its discretion under a mandatory system. Under such circumstances, the Booker error is harmless. United States v. Perez-Ramirez, 415 F.3d 876, 878 (8th Cir. 2005).

III

We affirm the district court's sentence in all respects.

_____