# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4348

_____

United States of America,                *
                                  *

        Appellee,            *

                                  *    Appeal from the United States

    v.                        *    District Court for the

                                  *    Eastern District of Arkansas.

Mary K. Edelmann,           *

                                  *     [UNPUBLISHED]

        Appellant.          *

_____

Submitted: May 16, 2006
Filed: August 22, 2006

_____

Before LOKEN, Chief Judge, MELLOY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Mary K. Edelmann pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, but before she was sentenced, she moved to withdraw her plea. The district court[1] denied her motion, and then sentenced her to 37 months' imprisonment and ordered her to pay $25,000 in restitution. She appeals, and we affirm.

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

An indictment returned on October 6, 2004, alleged that Edelmann had committed wire fraud by using someone else's personal identity information to open a credit card account, and then using that new line of credit to transfer $25,000 into an account bearing her name. The indictment also alleged that she had committed this offense while on pre-trial release, in violation of 18 U.S.C. § 3147(1), following a prior indictment for mail fraud and wire fraud.

On November 9, 2004, Edelmann entered into a plea agreement pursuant to which, among other things, she agreed to plead guilty to wire fraud in the instant case, agreed to consolidate the two criminal cases for sentencing, stipulated that her sentences in two cases would run consecutively, promised to drop complaints with the Arkansas bar that she had initiated against a former attorney, stipulated to an offense level under the United States Sentencing Guidelines, and waived her right to appeal her conviction. The government agreed to dismiss the count alleging that her crime was committed while on release. At a change-of-plea hearing held that same day, the district court accepted Edelmann's plea of guilty to the charge of wire fraud, and dismissed the second count of the indictment.

The two criminal cases were consolidated and set for sentencing before the judge to whom the first case was assigned. But before the sentencing hearing, the attorney who had represented Edelmann during her plea negotiations moved to withdraw, and after the motion was granted, the sentencing was continued until May 27, 2005, so Edelmann's new attorney could familiarize himself with the case. On May 25, Edelmann moved to withdraw her plea, alleging that her judgment had been impaired by medication, and that her attorney had labored under a conflict of interest at the time of her plea hearing.

The district court held several hearings to consider Edelmann's motion. Edelmann presented evidence that she had fallen from a horse and started taking prescription pain medication 10 days before she pled guilty to wire fraud, and that she

had been treated by a psychiatrist who prescribed Adderall and Lexapro. Edelmann testified that she had little recollection of the proceedings. Edelmann's niece also testified that throughout the evening before the plea hearing, Edelmann was behaving strangely. The attorney who represented Edelmann at the change-of-plea hearing, Jerome Kearney, testified that he had discussed the plea agreement with Edelmann, and had no doubt about Edelmann's competency or understanding of the plea proceedings at the time of the plea hearing.

After the hearing, the district court denied Edelmann's motion to withdraw the plea. The court credited Kearney's testimony that Edelmann had been competent, and included its own observation that at the time of the plea hearing, Edelmann appeared "alert and understood what was going on," and a finding that she was "fully herself." (Order, R. Doc. 72, at 3-4). The court also recalled that Edelmann had been questioned about her prescription medication, but stated that her medication "did not affect her thinking."[2] The court concluded that she had not shown a credible reason why she should be allowed to withdraw her plea.

A presentence investigation report ("PSR") was prepared. As specified by the plea agreement, the PSR applied the 2002 sentencing guidelines and recommended a base offense level of six, *see* USSG § 2B1.1(a), a four-level increase for the loss

_____

[2]In a pro se letter filed July 24, 2006, Edelmann disputes the accuracy of the transcript reflecting her statement at the change-of-plea hearing that, "I'm taking some prescription medication, but it's not affecting my thinking." (Change-of-Plea Hr'g Tr. at 3). It is not our practice to consider pro se pleadings filed by parties represented by counsel, *United States v. Clark*, 409 F.3d 1039, 1041 n.2 (8th Cir. 2005), and, in any event, Edelmann has not invoked the procedures available to have a transcript corrected by the district court when a party believes that it is inaccurate. *See* Fed. R. App. P. 10(e)(1). We note, moreover, that a transcript of a hearing on Edelmann's motion to withdraw her guilty plea, as to which Edelmann has raised no objection, reflects that she admitted stating at the change-of-plea hearing that the medication was not affecting her thinking. (Tr. of Motions Hearing, Oct. 13, 2005, at 22).

amount of $25,000, *see id.* § 2B1.1(b)(1)(C), and a two-level increase for using a means of identification to obtain another means of identification. *See id.* § 2B1.1(b)(9)(C)(i). The PSR also recommended an adjustment for obstruction of justice because Edelmann had absconded while on pre-trial release. *See id.* § 3C1.1. Because Edelmann had attempted to withdraw her plea, the PSR did not recommend an adjustment for acceptance of responsibility. Based on a total offense level of 14 and a criminal history category of VI, the PSR calculated the applicable advisory guideline range to be 37 to 46 months' imprisonment.

At sentencing, the district court overruled Edelmann's objection to the specific offense characteristic for using a means of identification to acquire another means of identification and her objection to the calculation of her criminal history, but sustained her objection to the adjustment for obstruction of justice. These rulings resulted in a total offense level of 12 and a guideline range of 30 to 37 months. Edelmann argued that since she had already received a 92-month sentence for the fraud case with which the instant case was consolidated, she already had been punished sufficiently for both offenses, and that she should therefore receive either a concurrent sentence in the instant case, or a shorter consecutive sentence. The court rejected her arguments and imposed a consecutive sentence of 37 months' imprisonment.

Edelmann argues on appeal that the district court abused its discretion in denying her motion to withdraw her plea. According to Edelmann, her recent use of prescription medications rendered her plea "unknowing and unintelligent." In addition, she contends that her attorney was hindered by a conflict of interest, because as part of her plea agreement, she agreed to dismiss her complaints against a former attorney, Darrell Brown, and her new attorney might have had a self-interested desire for her to dismiss the complaints. She also argues that her attorney was ineffective because he failed to advise her that the offenses in her two cases would have been "grouped" under the sentencing guidelines, *see* USSG § 3D1.1, and that her sentences in the two cases would not have been consecutive, as stipulated in the plea agreement.

We see no abuse of discretion in the district court's conclusion that none of these contentions is a "fair and just reason" to permit Edelmann to withdraw her plea. *See* Fed. R. Crim. P. 11(d)(2)(B). "A guilty plea is a solemn act not to be set aside lightly," and a defendant bears the burden of demonstrating that she should be permitted to withdraw her plea. *United States v. Embrey*, 250 F.3d 1181, 1183 (8th Cir. 2001). Edelmann relied solely on her own testimony and the testimony of her niece to establish that her medications affected her understanding of the proceedings, but the district court found that her assertions were "not credible." (Order, R. Doc. 72, at 2). There was contrary evidence, moreover, from which the district court reasonably could conclude that Edelmann was competent to plead guilty, not the least of which was the district court's own first-hand opportunity to examine Edelmann and inquire about her state of mind before it accepted her plea. Attorney Kearney also testified that he had spoken with Edelmann at length and believed she was competent, and the district court credited his testimony. We give deference to the district court's credibility determinations, *United States v. Picone*, 773 F.2d 224, 226 (8th Cir. 1985) (per curiam), and we conclude that the district court's conclusion that Edelmann was competent despite her medications was well supported by the record and not clearly erroneous.

Edelmann's argument that her attorney labored under a conflict of interest is not supported by the record. There is no allegation that Darrell Brown, the attorney who arguably benefitted from the plea agreement, participated in any way in the plea negotiations, or that attorney Kearney had any personal stake in the outcome of her plea negotiations. Edelmann's claim that attorney Kearney was ineffective should be raised, if at all, in a motion for a writ of habeas corpus under 28 U.S.C. § 2255. *Embrey*, 250 F.3d at 1184.

Edelmann also challenges her sentence, arguing that the district court erroneously calculated the applicable guideline range under the advisory guidelines. According to Edelmann, the district court erred in applying the "means of

identification" enhancement under USSG § 2B1.1(b)(9)(C)(i) (2002), and in calculating her criminal history. We review findings of fact underlying the district court's calculation of the guidelines for clear error, and we review the court's application of the guidelines to the facts *de novo*. *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

There is no merit to Edelmann's contention that the district court erred in applying an enhancement for using a means of identification to obtain another means of identification. Edelmann agreed to the application of this specific offense characteristic in her plea agreement, and she may not now challenge receiving precisely "what [s]he bargained for." *United States v. Nguyen*, 46 F.3d 781, 783 (8th Cir. 1995). Even if she had not stipulated to the enhancement, the application notes to the guidelines clearly encompass a situation like Edelmann's, where another individual's name and Social Security number are unlawfully used to obtain credit. USSG § 2B1.1, comment. (n.7(C)(ii)(I)); *see also United States v. Williams*, 355 F.3d 893, 899-900 (6th Cir. 2003). Edelmann argues that by adding her name to the fraudulently opened account, she "severed" any connection to the victim, but we have previously rejected this argument, reasoning that the use of a name other than the victim's on an unlawfully obtained account does not mitigate the harm caused by the use of "someone's identifying information to establish new credit." *United States v. Oates*, 427 F.3d 1086, 1090 (8th Cir. 2005).

Edelmann also argues that her criminal history was miscalculated because three of her prior convictions, for which she received a total of nine criminal history points, were for related offenses not separated by intervening arrests. She argues that the sentences for these convictions should have been treated as one sentence, because the cases were related, *see* USSG § 4A1.2(a)(2), and that only three criminal history points should have been assessed.

At sentencing, the district court considered "the FBI rap sheet, the old PSRs, and state court documents," and found that those records showed that each of the three offenses was separated by an intervening arrest. Consequently, the court determined that the cases were not "related," and that the sentences should be counted separately. *See* USSG § 4A1.2(a)(2) & comment. (n.3). Edelmann argues that the district court failed to make a finding about the contested arrest dates, but the court did articulate its belief that the cited documents "verify" that she had intervening arrests. (S. Tr. at 7). Although the presentence report was not evidence, the district court cited the FBI criminal history printout, state court documents and prior presentence reports to support its findings. Edelmann did not present any evidence, other than her memory, to counter those documents. The district court did not clearly err in concluding that the offenses listed in paragraphs 27, 28, and 30 of the presentence report were separated by intervening arrests, and that the prior sentences were properly counted separately in calculating the criminal history score.

The judgment of the district court is affirmed.

_____