PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

v.

JAMES WESLEY MYERS, JR., a/k/a Jimmy,

    *Defendant-Appellant.*

No. 07-4417

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(5:06-cr-00028)

Argued: October 31, 2008

Decided: January 16, 2009

Before WILLIAMS, Chief Judge, and TRAXLER
and KING, Circuit Judges.

Affirmed by published opinion. Judge Traxler wrote the opinion, in which Chief Judge Williams and Judge King joined.

## COUNSEL

**ARGUED:** Ross Hall Richardson, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF

THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Peter Adolf, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

James Myers, who had previously been convicted of a felony, pleaded guilty to a charge of unlawful possession of a firearm. *See* 18 U.S.C.A. § 922(g)(1) (West 2000). Because the firearm was capable of accepting a large-capacity magazine, the district court at sentencing increased Myers's base offense level by six points. *See* U.S.S.G. § 2K2.1(a)(4)(B)(i)(I) (2006). Myers appeals, arguing that the application of the sentencing enhancement violated the Ex Post Facto Clause of the United States Constitution. Finding no constitutional error, we affirm.

I.

A.

The firearm at issue in this case qualified as a "semiautomatic assault weapon" as defined by 18 U.S.C.A. § 921(a)(30), the possession of which (at least for a time) was prohibited by federal law. *See* 18 U.S.C.A. § 922(v)(1) (West 2000) ("It shall be unlawful for a person to manufacture, transfer, or possess a semiautomatic assault weapon."). The assault-weapon ban, however, expired on September 13, 2004, and § 922(v)'s prohibition against possession and § 921's definition of a semiautomatic assault weapon were repealed as of that date. *See* Pub. L. 103-322, § 110105, 108

Stat. 1796, 2000 (1994) ("This subtitle and the amendments made by this subtitle—(1) shall take effect on the date of the enactment of this Act [September 13, 1994]; and (2) are repealed effective as of the date that is 10 years after that date.").

Myers committed the offense at issue in this appeal on April 1, 2006, well after the expiration of the assault-weapon ban. At the time of the offense, the then-current 2005 version of the Sentencing Guidelines Manual provided for a six-level increase to a felon-in-possession's base offense level "if the offense involved a firearm described in . . . 18 U.S.C. § 921(a)(30)." U.S.S.G. § 2K2.1(4)(B) (2005). By the time Myers was sentenced in December 2006, however, the 2006 Manual had taken effect. The 2006 Manual amended § 2K2.1(4)(B) to eliminate the reference to 18 U.S.C.A. § 921(a)(30) and to provide for the large-capacity-magazine enhancement that was applied by the district court. *See* U.S.S.G. § 2K2.1(a)(4)(B) (2006).

The general rule is that the district court should use the sentencing manual in effect at the time of sentencing, *see* 18 U.S.C.A. § 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11(a), which is what the district court did in this case. There is, however, an exception to the general rule: If use of the then-current manual would violate the Ex Post Facto Clause by subjecting the defendant to a higher sentence, the court should use the version of the manual in effect when the offense was committed. *See* U.S.S.G. § 1B1.11(b)(1); *United States v. Heater*, 63 F.3d 311, 331 (4th Cir. 1995) ("[A]mendments to the Guidelines occurring after a defendant's offense but before sentencing should not be applied if doing so would increase the sentence, because that would violate the Ex Post Facto Clause in Article I, § 9 of the United States Constitution.").

On appeal, Myers argues that because the assault-weapons ban had already expired and the definitions contained in § 921(a)(30) had been repealed when he committed the

offense, the 2005 Guidelines enhancement (which refers to § 921(a)(30)) could not have been applied to him. And because his base offense level would not have been enhanced under the 2005 Manual, Myers argues that the district court's use of the 2006 Manual led to an increase in his sentence in violation of the Ex Post Facto Clause. Myers's Ex Post Facto claim is thus dependent on his view that the repeal of the assault-weapon ban instantly and automatically rendered the 2005 version of § 2K2.1(4)(B) a nullity. If the 2005 enhancement remained viable after the repeal such that it could have been applied to Myers, then the application of the 2006 enhancement did not increase Myers's sentence, and the Ex Post Facto claim must fail.

### B.

While Myers insists on appeal that the repeal of the assault-weapon ban rendered the 2005 enhancement a nullity, the basis for his argument is less than clear. It appears to rest on little more than an assumption that, as a matter of law, the repeal of § 922(v) and § 921(a)(30) also amounts to a repeal of any other statute that refers to those provisions. As we explain below, however, the repeal of the assault-weapon ban did *not* operate as a repeal of the 2005 enhancement.

We first note that if the list of weapons itself were actually set forth in the enhancement, then as a matter of basic logic there would be no reason to think that the repeal of the assault-weapon ban would affect the validity (post-repeal) of the enhancement. After all, the Sentencing Commission has the authority to conclude that the possession of certain kinds of firearms by felons or other prohibited persons is especially dangerous, even if possession of such weapons by the general public is not otherwise prohibited by law. *See, e.g.*, 28 U.S.C.A. §§ 994(c)(2) & (5) (West 2006) (requiring the Sentencing Commission when formulating the Guidelines to consider, among other things, "the circumstances under which the offense was committed which mitigate or aggravate the seri-

ousness of the offense" and "the public concern generated by the offense"). And as we explain below, the Sentencing Commission accomplished the same result by including in the 2005 enhancement a specific reference to the list contained in § 921(a)(30).

The general rule is that when one statute adopts a provision of another statute by specific reference, it is as if the adopting statute had itself spelled out the terms of the adopted provision:

"Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, *the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute*."

*Hassett v. Welch*, 303 U.S. 303, 314 (1938) (emphasis added; quoting 2 *Sutherland Statutory Construction*, 787-88 (2d ed. 1904)); *accord United States v. Oates*, 427 F.3d 1086, 1089 (8th Cir. 2005); *see also* 1A Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 22:25 (6th ed. 2002) ("When a statute adopts the provisions of another statute by specific reference, the effect is as if the referenced statute had been incorporated into the adopting statute."). This principle applies equally to the incorporation of a statutory provision by the Sentencing Guidelines. *See Oates*, 427 F.3d at 1089.

Applying this principle requires us to read the 2005 enhancement as if it had reproduced in the text of the enhancement itself the list of qualifying weapons set out in 18 U.S.C.A. § 921(a)(30). And as explained above, there is, as a matter of logic, no reason that the repeal of the assault-weapon ban should render invalid the Sentencing Commission's independent decision that the possession of these weapons by prohibited persons is especially dangerous. General principles of statutory construction support this view as well.

"Where a reference statute incorporates the terms of one statute into the provisions of another act, the two statutes co-exist as separate distinct legislative enactments, each having its appointed sphere of action." *Sutherland Statutory Construction*, *supra*, § 23:33 (internal quotation marks omitted). Accordingly, "[a]s neither statute depends upon the other's enactment for its existence, the repeal of the provision in one enactment does not affect its operation in the other statute." *Id.* The repeal of the assault-weapon ban therefore did not, as a matter of general legal principles, operate as a repeal of the 2005 enhancement.

Moreover, we find nothing in the language of the 2005 enhancement that otherwise makes the viability of the enhancement dependent on the status of the assault-weapon ban itself. As noted above, the 2005 enhancement called for a six-point increase in the defendant's base offense level "if the offense involved a firearm *described in* . . . 18 U.S.C. § 921(a)(30)." U.S.S.G. § 2K2.1(4)(B) (2005) (emphasis added). There is no language stating that the enhancement may be applied only while the assault-weapon ban remains effective, nor is there any language connecting the enhancement to the prohibited status of the weapons at issue. Section 921(a)(30) was a definitional statute only—it listed specific firearms that qualified as semiautomatic assault weapons as well as combinations of weapon components that qualified as semiautomatic assault weapons, but it did not impose any restrictions on the use or possession of firearms meeting the definition. That prohibitory function was instead filled by § 922(v)(1), which made it "unlawful for a person to manufacture, transfer, or possess a semiautomatic assault weapon."

If the 2005 enhancement had spoken in terms of *prohibited* weapons, Myers's argument that the repeal of the assault-weapon ban effectively repealed the enhancement might be more persuasive. For example, if the 2005 Guidelines provided for a sentencing enhancement if the possession of the weapon at issue was "prohibited by 18 U.S.C.A. § 922(v),"

then the repeal of the § 922(v) would eliminate the factual basis for an enhancement because § 922(v) would have no prohibitory effect after its repeal. Application of the 2005 enhancement, however, depends not on whether possession of the weapon at issue was otherwise prohibited by law, but on whether the weapon appeared on a list of weapons contained in a specified statute and (effectively) repeated verbatim in the 2005 enhancement itself. Thus, we find nothing in the plain language of the 2005 enhancement to support Myers's view that the repeal of the assault-weapon ban somehow rendered the 2005 enhancement inoperative. As the Second Circuit has explained:

> We are aware of no authority that prevents Congress, or the Sentencing Commission acting under Congressional authority, from incorporating by reference any definition they choose in the Sentencing Guidelines, whether or not that definition is contained in a currently operative provision of the United States Code. We see no sensible alternative to reading § 2K2.1(a)(5)'s reference to § 921(a)(30) to mean that *despite the repeal of that statute*, courts should continue to ascertain whether the firearm used by the defendant in the commission of the crime qualified as a "semiautomatic assault weapon" under that section.

*United States v. Roberts*, 442 F.3d 128, 130 (2d Cir. 2006) (per curiam) (emphasis added; citations omitted).[1]

---

[1] While this observation is not dispositive of the question, we note that the Sentencing Commission apparently did not view the repeal of the assault-weapon ban as having any effect on the viability of the pre-repeal version of § 2K2.1. After the ban was repealed in 2004, the Commission twice amended § 2K2.1 without removing the reference to 18 U.S.C.A. § 921(a)(30). *See United States v. Roberts*, 442 F.3d 128, 130 (2d Cir. 2006).

In support of his claim, Myers points to cases where the offense of conviction occurred before the expiration of the assault-weapon ban, but the sentencing took place after the expiration. *See United States v. Simmons*, 485 F.3d 951 (7th Cir. 2007) (per curiam); *United States v. Whitehead*, 425 F.3d 870 (10th Cir. 2005); *Roberts*, 442 F.3d at 130-31; *United States v. Caldwell*, No. 05-5019, 182 Fed. Appx. 227, 229 (4th Cir. May 25, 2006) (per curiam). Although these cases uniformly rejected the defendants' claims that the repeal of the assault-weapon ban rendered the enhancement inapplicable, Myers contends that implicit in the analysis of these courts is an assumption that the enhancement is inapplicable if the offense occurred after the repeal of the assault-weapon ban. *See Simmons*, 485 F.3d at 953-54 ("Simmons makes this argument despite the fact that it is undisputed that § 921(a)(30) was in effect at the time Simmons committed the weapons offense for which he was convicted . . . ."); *Whitehead*, 425 F.3d at 872 ("The language of § 2K2.1(a)(4)(B) . . . was clearly intended, in our view, to focus on the circumstances in existence at the time the offense of conviction was committed."); *Roberts*, 442 F.3d at 129 ("We conclude that the Sentencing Commission intended that courts determine for purposes of § 2K2.1(a)(5) whether the firearm used by the defendant qualified as a 'semiautomatic assault weapon' under § 921(a)(30) at the time of the crime."); *Caldwell*, 182 Fed. Appx. at 229 ("Caldwell committed the instant offense . . . before the ban on semiautomatic firearms was repealed. Therefore, § 921(a)(30)(B) was properly treated as remaining in force for sentencing purposes." (citation omitted)). According to Myers, these cases support his view and establish that "for purposes of the enhancement, *the issue is whether the weapons were banned at the time of the crime*, not whether they were banned at the time of sentencing." Brief of Appellant at 18 (emphasis added).

As we have explained, however, the 2005 enhancement *does not* turn on whether the possession of the weapon was prohibited; it turns on whether the weapon appeared on a

specified list. The cases cited by Myers involve defendants who committed the crime before the assault-weapon ban was repealed, and those courts simply were not required to decide whether the 2005 enhancement remained effective after the repeal of the assault-weapon ban. Under these circumstances, we decline to rely on dicta in those cases that is perhaps supportive of an assumption—the repeal of the assault-weapon ban repealed the 2005 enhancement—that is in direct conflict with the general principles of statutory construction discussed above.

We therefore conclude that the repeal of the assault-weapon ban did not affect the reference in the 2005 enhancement to § 921(a)(30)'s list of weapons qualifying as semiautomatic assault weapons, and we also conclude that there is no language in the 2005 enhancement that limits its operation to crimes committed during the life of the assault-weapon ban. Because Myers was subject to a six-level enhancement under the 2005 and 2006 Guidelines Manuals, the district court's use of the 2006 Manual did not violate the Ex Post Facto Clause.[2]

## II.

Myers notes that under the line of cases culminating with *Booker*, the use of a mandatory sentencing scheme in conjunction with judge-made findings of fact violates the Sixth Amendment, and Myers contends that it is implicit in that line of cases that such a mandatory sentencing scheme would violate the Fifth Amendment as well. Myers then argues that this circuit's post-*Booker* case law establishing the boundaries of reasonableness review has created a *de facto* mandatory sen-

---

[2]Our conclusion in this regard makes it unnecessary to consider the government's alternative argument that the post-*Booker* advisory nature of the Sentencing Guidelines removes Guideline changes from the reach of the *Ex Post Facto* clause. *See United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006) ("We conclude that the ex post facto clause should apply only to laws and regulations that bind rather than advise . . . .").

tencing system. According to Myers, the sentence imposed under this *de facto* mandatory sentencing scheme thus violated his Fifth and Sixth Amendment rights and his rights of confrontation as set forth by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004).

We decline to consider these arguments. A panel of this court is required to apply and follow the decisions of prior panels. *See, e.g.*, *McMellon v. United States*, 387 F.3d 329, 332-34 (4th Cir. 2004) (en banc); *Longworth v. Ozmint*, 377 F.3d 437, 448 n.2 (4th Cir. 2004) (noting that panel was not entitled to reconsider applicable precedent decided by prior panel). *Booker* and its progeny have clearly established that the Sentencing Guidelines are now advisory, and we have in our post-*Booker* opinions endeavored to faithfully follow the principles set forth by the Supreme Court. If Myers believes that our post-*Booker* opinions are in fact inconsistent with the Supreme Court precedent, he must make that argument to the Supreme Court or to this court sitting *en banc*.

### III.

For the reasons we have explained above, we conclude that the repeal of the assault-weapon ban had no effect on the post-repeal viability of the 2005 Sentencing Guidelines' enhancement for possession of a firearm that qualified as a semiautomatic assault weapon under 18 U.S.C.A. § 921(a)(30). Because Myers was subject to a six-level enhancement under the 2005 Guidelines Manual and the 2006 Guidelines Manual, the district court's use of the 2006 Manual did not violate the Ex Post Facto Clause. Accordingly, Myers's sentence is hereby affirmed.

*AFFIRMED*