[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12550
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cr-60013-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOEY LITTLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 28, 2019)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Joey Little appeals his 57-month sentence of imprisonment, imposed at the

low end of the advisory guideline range, after pleading guilty to one count of

possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Mr. Little asks us to reverse due to three allegedly improper guideline enhancements applied by the district court. He argues that the enhancement under U.S.S.G. § 2K2.1(a)(4)(B) for possession of a high-capacity magazine violates his Second Amendment rights and constitutes an unlawful usurpation of congressional authority by the United States Sentencing Commission. He also contends that the government failed to meet its evidentiary burden to prove that he possessed a firearm in connection with a felony offense under § 2K2.1(b)(6)(B) or that he possessed three genuine firearms under § 2K2.1(b)(1)(A). Finally, Mr. Little argues that an enhancement related to possession of marijuana, given changes in laws throughout the country, creates a sentencing disparity in violation of 18 U.S.C. § 3553(a).

After careful consideration of the parties' briefs and the record, we affirm.

# I

On January 13, 2017, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was advised that Mr. Little had posted videos and photographs on social media accounts showing himself in the possession of firearms. Mr. Little, an aspiring musician, has all the accounts listed under his performance name, "Teddy Blow," rather than his real name.

Several photos depicted Mr. Little posing with a black and silver pistol in hand. [*Id.*] Multiple videos, broadcast live on the streaming service Periscope,

2

showed Mr. Little brandishing the gun and commenting on it.  In one video, Mr. Little was seen chambering a round and firing it into the air.  An ATF firearms expert reviewed Mr. Little's social media profiles and identified the silver and black pistol as a Taurus G2 Millennium.  The expert also recognized two other pistols, a Ruger P Series pistol and an AP9 pistol.  Mr. Little's social media accounts included a photograph of him posing with four large plastic bags that appeared to contain marijuana.

On January 11, 2018, officers arrested Mr. Little as he entered his car.  They asked Mr. Little if he had a firearm, and he disclosed that there was one in his lunch bag on the passenger seat.  Officers recovered a black and silver Taurus G2 Millennium pistol from the lunch bag, where they also discovered approximately 39.2 grams of marijuana and 72 small plastic bags.  Mr. Little waived his *Miranda* rights and provided a recorded interview admitting that he possessed a firearm.  He explained that he kept the gun for protection because he had previously been shot at for what he believed was his past involvement in selling drugs and other crimes.  On March 28, 2018, Mr. Little pled guilty to a one-count indictment for being a felon in possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1).

Mr. Little's Pre-Sentence Investigation Report ("PSI") recommended enhancing his base offense level under the advisory guidelines from 12 to 20 under § 2K2.1(a)(4)(B) for the large-capacity magazine attached to the Taurus pistol.  The

PSI also recommended an additional two-level enhancement under § 2K2.1(b)(1)(A) for the possession of at least three but fewer than eight firearms, and a four-level enhancement under § 2K2.1(b)(6)(B) for the possession of a firearm in connection with another felony offense. Because Mr. Little received a three-level reduction for acceptance of responsibility, the PSI calculated total offense level of 23. With 6 criminal history points and a criminal history category of III, Mr. Little's advisory imprisonment range was 57 to 71 months. Mr. Little filed objections to the PSI, and the government responded in a sentencing memorandum.

The district court held the sentencing hearing on June 7, 2018, where he argued the same objections he had raised as to the PSI. The government called ATF Agent Samuel Lawrence to testify about the agency's investigation into Mr. Little, the photos and videos obtained from his social media, and the details of his arrest. Agent Lawrence also testified about the report from the firearms expert about the guns seen in Mr. Little's social media postings. The report identified the black and silver pistol as a Taurus G2 Millennium, which was the gun ultimately found in Mr. Little's possession. The report noted that there are no known replicas, BB-gun variants, or airsoft models of the Taurus G2. Under questioning, Agent Lawrence stated that the report did not mention the AP9 or the Ruger, but that the expert had told him that all the weapons seen on social media were genuine. After Agent Lawrence's testimony, and after defense counsel presented arguments, the district

4

court overruled Mr. Little's objections and sentenced Mr. Little to a term of 57 months.  Mr. Little filed this timely appeal.

## II

We review the district court's interpretation and application of the sentencing guidelines de novo.  *See United States v. Moran*, 778 F.3d 942, 959 (11th Cir. 2015). We also review the constitutionality of the guidelines de novo.  *See United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015).

### A

Mr. Little challenges the application of § 2K2.1(a)(4)(B)—which increased his base offense level from 12 to 20 for the large-capacity magazine attached to the Taurus G2 pistol—on the grounds that it punishes conduct that he maintains is protected by the Second Amendment.  He also argues that § 2K2.1(a)(4)(B) is an improper usurpation of congressional authority by the Commission because it contradicts Congress' intent to not criminalize the possession of large-capacity magazines.

The Second Amendment protects the right to keep firearms for the purpose of self-defense.  *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008).  The Second Amendment does not, however, protect the possession of firearms by convicted felons, *id.* at 592, and Congress has expressly criminalized such possession.  *See* 18 U.S.C. § 922(g)(1).  *See also United States v. Rozier*, 598 F.3d

5

768, 771 (11th Cir. 2010) ("[S]tatutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people.").

Some circuit and district courts have addressed whether the Second Amendment protects the possession of large-capacity magazines.[1]  But we need not reach the issue here.  Mr. Little is a convicted felon whose rights have not been restored.  Thus, any Second Amendment protection that might be afforded to the possession of large-capacity magazines would not be available to Mr. Little.  *See Rozier*, 598 F.3d at 1285–86.

**B**

Mr. Little argues that § 2K2.1(a)(4)(B) exceeds the Commission's authority because it punishes conduct that Congress expressly intended not to prohibit.  He maintains that such intent was manifested in Congress' decision to not reauthorize the Public Safety and Recreational Firearms Use Protection Act (the "Act") after its lapse in 2004, or to pass a new law that includes similar prohibitions.  In the absence

---

[1] *See Kolbe v. Hogan*, 849 F.3d 114, 136 (4th Cir. 2017) (en banc) (holding that the Second Amendment does not cover large-capacity magazines because they fall within *Heller*'s exception for "weapons that are most useful in military service"); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 263–64 (2d Cir. 2015) (upholding, under intermediate scrutiny, state bans on the possession of large-capacity magazines, but striking down a seven-round load limit). *Contra Duncan v. Becerra*, 742 F. App'x 218, 221 (9th Cir. 2018) (unpublished) (holding that a district court did not abuse its discretion in determining that large-capacity gun magazines likely fall within the scope of the Second Amendment); *Duncan v. Becerra*, No. 3:17-cv-1017-BEN (JLB), 2019 WL 1434588, *36 (S.D. Cal. Mar. 29, 2019) (holding unconstitutional California's ban on large-capacity magazines).

of any current federal law that proscribes the possession of large-capacity magazines, he argues, the Commission may not promulgate guidelines that punish such conduct.

Passed in 1994, the Act made it unlawful to possess certain types of firearms (e.g., "semiautomatic assault weapons"). *See* Pub. L. No. 103-322, Title XI, Subtitle A, § 110102, 108 Stat. 1796 (1994). The Act amended 18 U.S.C. § 922 by adding subsection (w)(1), which made it unlawful for a person to "possess a large capacity ammunition feeding device." H.R. 3355-201. And in § 922(a)(30), the Act defined a large capacity ammunition feeding device as a "magazine . . . that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition." In 1995, the Commission adopted § 2K2.1(a)(4)(B), which provided for a base offense level of 20 if an "offense involved a firearm described in 18 U.S.C. § 922(a)(30)." U.S.S.G. § 2K2.1(a)(4)(B) (1995). *See also* U.S.S.G. App. C, amend. 522.

In 2004, the Act expired pursuant to its ten-year sunset provision. Congress chose not to reauthorize the Act, the ban expired, and 18 U.S.C. § 922(a)(30) was repealed. Two years later, the Commission amended § 2K2.1(a)(4)(B) by deleting the cross-reference to 18 U.S.C. § 922(a)(30) and adding language applying the enhancement if the "offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine." U.S.S.G. § 2K2.1(a)(4)(B). It is this amended

guideline that Mr. Little challenges as an improper exercise of the Commission's power.

The guideline provides for a base offense level of 20 if the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine" and the defendant "was a prohibited person at the time the defendant committed the instant offense." U.S.S.G. § 2K2.1(a)(4)(B). A prohibited person is defined as any person described by 18 U.S.C. § 922(g)(1). *See* U.S.S.G. § 2K2.1(a)(4)(B) cmt. n.3. A "semiautomatic firearm that is capable of accepting a large capacity magazine" is defined as a firearm that, at the time of the offense, "had attached to it a magazine or similar device that could accept 15 or more rounds of ammunition; or . . . a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm." U.S.S.G. § 2K2.1(a)(4)(B) cmt. n.2.[2]

The Sentencing Guidelines are created by the Commission, which "promulgates the guidelines by virtues of an express congressional delegation of authority for rulemaking . . . thus the guidelines are the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States*, 508 U.S. 36, 44–45 (1993). Congress granted the Commission "substantial statutory discretion in formulating guidelines[, including the] authority to determine the relative severity of federal

---

[2] The sentencing guidelines' commentary is binding unless a guideline and the commentary are in conflict. *See Stinson*, 508 U.S. at 44.

crimes and to assess the relative weight of the offender characteristics . . . ." *See Mistretta v. United States*, 488 U.S. 361, 377 (1989). Nevertheless, where a guideline conflicts with a statute, the statute controls. *See United States v. Eggersdorf*, 126 F.3d 1318, 1320 (11th Cir. 1997).

Mr. Little is incorrect that U.S.S.G. § 2K2.1(a)(4)(B) punishes the mere possession of a large-capacity magazine. Rather, the guideline punishes the possession of a large-capacity magazine that, as in his case, is "attached to" or "in close proximity to" a firearm *that he was prohibited from possessing* under 18 U.S.C. § 922(g)(1). *See* U.S.S.G. § 2K2.1, cmt. n.2. Thus, the guideline does not conflict with the plain language of any federal statute, or with Congress' apparent intent to allow *law-abiding* citizens to possess large-capacity magazines. The Commission "enjoys significant discretion in formulating guidelines" and has the authority to enhance sentences for conduct that it determines makes an already unlawful act more severe. *See Mistretta*, 488 U.S. at 377. The guideline enhancing Mr. Little's sentence for the large-capacity magazine falls within that authority.[3]

---

[3] Our conclusion is consistent with the decisions of other circuits. *See, e.g., United States v. Marceau*, 554 F.3d 24, 29–30 (1st Cir. 2009) (finding no conflict between the lapse of the Act and the Commission's decision to impose a higher offense level for the possession of an assault weapon by a "prohibited person"); *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009) (same); *United States v. Barron*, 557 F.3d 866, 870 (8th Cir. 2009) (same); *United States v. Whitehead*, 425 F.3d 870, 871-72 (10th Cir. 2005) (upholding the prior version of § 2K2.1(a)(4)(B), which still cross-referenced § 921(a)(30), despite the repeal of that section).

## C

Mr. Little challenges the sufficiency of the evidence to support the four-level enhancement for possession of a firearm in connection with another felony offense, *see* U.S.S.G. § 2k2.1(b)(6)(B), and the two-level enhancement for possession of three to seven firearms, *see* § 2K2.1(b)(1)(A).  The government bears the burden of proving by a preponderance of the evidence the facts necessary to support a sentencing enhancement.  *See United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).  A district court "may consider any information (including hearsay), regardless of its admissibility . . . , provided that the information is sufficiently reliable."  *United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir. 1999).

We review a district court's factual findings for clear error.  *See United States v. Rhind*, 289 F.3d 690, 693 (11th Cir. 2002).  A factual finding is clearly erroneous when, after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake has been made.  *See United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004).  "Credibility determinations made by the district court are entitled to deference by a reviewing court."  *United States v. Holland*, 874 F.2d 1470, 1473 (11th Cir. 1989).

## 1

Mr. Little claims that the four-level enhancement for possession of a firearm in connection with another felony offense was erroneous for two reasons.  First, the

government failed to present sufficient evidence to prove that the Taurus pistol was connected to the small quantity of marijuana also found in his possession. Second, because marijuana laws differ across the states, the enhancement violates the requirement that sentencing courts consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The guidelines provide that a four-level enhancement applies if "the firearms or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A). With respect to drug trafficking offenses, the enhancement applies if "a firearm is found in close proximity to drugs." *Id.* cmt. n.14(B). *See also United States v. Gordillo*, 920 F.3d 1292, (11th Cir. 2019); *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013) ("A firearm found in close proximity to drugs or drug-related items simply 'has'—without any requirement for additional evidence—the potential to facilitate the drug offense.").

Based on the undisputed evidence presented at the sentencing hearing, the district court found that Mr. Little possessed the marijuana with intent to distribute, and enhanced his sentence accordingly. During Mr. Little's arrest, officers found the Taurus pistol in a lunchbox with approximately 39.2 grams of marijuana wrapped in plastic and a plastic bag holding 72 smaller plastic bags. Agent Lawrence testified at the sentencing hearing that the small plastic bags were

11

consistent with distribution of narcotics.  The government also presented evidence of the photo on Mr. Little's social media account showing him with four large bags of marijuana.  We see no reason to question the district court's factual determinations, which are sufficient to support the application of the sentencing enhancement.  *See Carillo-Ayala*, 713 F.3d at 92.

Mr. Little also argues that the enhancement violates § 3553(a)(6)'s requirement that sentencing in federal courts must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Mr. Little emphasizes the differences among the states in laws governing possession and sale of marijuana and maintains that he received a higher sentence than similarly situated defendants in districts where the possession of approximately 39.2 grams of marijuana is not a felony.

Although some states have decriminalized marijuana, and some do not ascribe felony status to possession of smaller quantities of marijuana, possession of any amount of marijuana with the intent to distribute is a felony under federal law.  *See* 21 U.S.C. § 841(a)(1), (b); *United States v. Williams*, 876 F.2d 1521, 1525 (11th Cir. 1989).  Thus, disparities in state marijuana possession laws are not relevant in this context.  Moreover, although the § 3553(a)(6) factors are designed to avoid sentencing disparities among defendants, we have held that sentences are not "subject to a national grade curve."  *United States v. Hill*, 643 F.3d 807, 885 (11th

12

Cir. 2011). Finally, Mr. Little has not identified any similarly situated defendants who have received a significantly different sentence than his. *Cf. United States v. Spoerke*, 568 F.3d 1236, 1252 (11th Cir. 2009) (co-suspect who elected pretrial diversion and was never prosecuted, convicted, or sentenced was not similarly situated under § 3553(a)(6)). Accordingly, he has not shown an unwarranted sentence.

## 2

Mr. Little argues that the two-level enhancement for possession of three to seven firearms was erroneous because the government failed to meet its burden of proving that two of the firearms depicted in his social media posts were real (rather than replicas, props, or airsoft or BB guns). Mr. Little suggests that, because his role in the rap music industry requires him to portray a certain persona, the social media postings involved the use of prop firearms.

During the sentencing hearing, Agent Lawrence testified that he reviewed the photographs and videos posted on Mr. Little's social media accounts showing Little in the possession of multiple firearms. He also testified about the firearm expert's report, which included an analysis of the Taurus G2 pistol found in Mr. Little's possession. The report mentioned the AP9 pistol and Ruger P Series pistol, but did not discuss whether replica versions exist of either. Agent Lawrence testified that the expert had reported to him that all the firearms in Mr. Little's social media posts

13

were genuine.  Mr. Little did not present any evidence to substantiate his claim that the weapons were props related to his rap music career.

The district court was presented with sufficient evidence to find, as a factual matter, that the firearms were genuine.  We find no reversible error.

## III

For the foregoing reasons, we affirm.

**AFFIRMED.**