

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2006

# USA v. Newsome

Precedential or Non-Precedential: Precedential

Docket No. 04-3292

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Newsome" (2006). *2006 Decisions.* Paper 1349.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1349

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3292

UNITED STATES OF AMERICA

v.

ALRAHMAN MUHAMMAD NEWSOME,

Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cr-00690)
District Judge: Hon. William G. Bassler

Argued on January 18, 2006

BEFORE: ROTH, FUENTES and BECKER, <u>Circuit Judges</u>

(Filed: March 9, 2006)

Mark A. Berman, Esquire
Michael A. Baldassare, Esquire (ARGUED)
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ   07102

       Counsel for Appellant


Christopher J. Christie, Esquire
United States Attorney
George S. Leone, Esquire
Chief, Appeals Division
Norman J. Gross, Esquire (ARGUED)
Assistant U.S. Attorney
970 Broad Street
Newark, NJ    02102-2535

       Counsel for Appellee

---

**OPINION OF THE COURT**

---


**ROTH**, <u>Circuit Judge</u>:

    The issue in this criminal sentencing appeal is whether the creation of forged driver's licenses and employer IDs for the

purpose of making fraudulent bank withdrawals qualifies for the two-level sentencing enhancement of U.S.S.G. § 2B1.1(b)(9)(C)(i) (2003) for "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification."[1]  For the reasons below we hold that it does and will affirm the District Court's judgment of sentence.

## I.  Factual and Procedural Background

Appellant Alrahman Muhammad Newsome conspired to make fraudulent withdrawals from customer accounts at Fleet Bank, an FDIC-insured bank. One of Newsome's co-conspirators, Annur Hamilton, had obtained personal contact and account information of Fleet customers from an unidentified Fleet employee.  Using this information, the conspirators produced fake driver's licenses, employee identification cards, and completed pre-printed withdrawal slips,[2] which were then used by two of the co-conspirators, Evelyn Rivera and Elaine Daniels,[3] to make withdrawals from Fleet branches.  Although

---

[1]  All references to the Sentencing Guidelines are to the November 5, 2003, version.    U.S.S.G. § 2B1.1(b)(9)(C)(i) (2003) is currently codified as § 2B1.1(b)(10)(C)(i) (2005).

[2] These withdrawal slips were the type normally included in check books and included the fraud victims' names and bank account numbers.

[3]  Rivera and Daniels entered guilty pleas, United States v. Rivera, Crim. No. 03-59; United States v. Daniels, Crim. No.

it is unclear who actually manufactured the fake identification cards, Newsome and Hamilton contributed to the effort by taking digital photographs of Rivera and Daniels. These photographs were then placed on forged identification cards, which contained the name and personal information of the fraud victims, but displayed the photograph of Rivera or Daniels. Newsome supplied the fake cards to Rivera and Daniels and served as their driver on the fraudulent forays to various Fleet branches. Before Newsome and his co-conspirators were apprehended, they managed to withdraw $135,340.00 that law enforcement officials were unable to recover. Newsome pled guilty to one count of conspiracy to defraud the United States (in its role as insurer of deposits at Fleet) in violation of 18 U.S.C. § 371. The District Court sentenced Newsome to a 27-month term of imprisonment and ordered restitution to Fleet.

Newsome's plea bargain included a provision that the United States Sentencing Guidelines would apply. Newsome's sentence was made within the range of 24-30 months suggested by the Sentencing Guidelines for an Offense Level of seventeen and a Category I Criminal History. Fifteen of the seventeen Offense Levels found by the District Court are undisputed.[4]

---

03-454, but neither has appealed. At the time of Newsome's sentencing, Hamilton had not been apprehended.

[4] Newsome's Base Offense Level under the Sentencing Guidelines was six because the maximum term of imprisonment for conspiracy to commit bank fraud under 18 U.S.C. § 371 is five years. U.S.S.G. § 2B1.1(a)(2). The District Court determined that the losses caused by the conspiracy were more

The issue in the case stems from the District Court's determination that a two-level upward Offense Level adjustment was warranted under U.S.S.G. § 2B1.1(b)(9)(C)(i), for "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." Without the upward adjustment under U.S.S.G. § 2B1.1(b)(9)(C)(i), Newsome's Offense Level would be fifteen so the suggested sentencing range would have been 18-24 months.[5] Newsome objected to the upward adjustment as a matter of law and has appealed the District Court's ruling on

---

than $120,000, but less than $200,000, which increased Newsome's Offense Level by ten. U.S.S.G. § 2B1.1(b)(1)(F). The District Court increased Newsome's Offense Level by two pursuant to U.S.S.G. § 3B1.1(c) for being an organizer, leader, manager, or supervisor in a criminal activity, but decreased it by two for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and then decreased it by a further one for not forcing the government to prepare for trial under U.S.S.G. § 3E1.1(b). Thus, without the § 2B1.1(b)(9)(C)(i) enhancement, Newsome's Offense Level was fifteen.

[5] While we note that Newsome's sentence was still within the statutory maximum of 60 months, and no claim has been raised that the District Court treated the Guidelines as mandatory, rather than advisory, the finding of an enhancement under the Guidelines could have increased the sentence meted out by the District Court.

that issue.[6]

The District Court exercised subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over Newsome's appeal under 28 U.S.C. § 1291. We undertake a plenary review of the District Court's interpretation of the Sentencing Guidelines. United States v. Moorer, 383 F.3d 164, 167 (3d Cir. 2004).

## II. Analysis

The District Court held that, as a matter of law, Newsome had illegally used one means of identification to produce another. We agree.

U.S.S.G. § 2B1.1(b)(9)(C)(i) calls for a two-level enhancement for "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." The phrase "means of identification" is defined in the Commentary to U.S.S.G. § 2B1.1:

> "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(4), except that such means of identification shall be of an actual (i.e., not fictitious) individual, other than the defendant or person for whose conduct the defendant is accountable under U.S.S.G. § 1B1.3 (Relevant Conduct).

---

[6] Newsome's plea arrangement reserved his the right to appeal the disputed § 2B1.1(b)(9)(C)(i) sentence enhancement.

Commentary to U.S.S.G. § 2B1.1, Application Note 9(A). In a case like this, where as part of a plea bargain the defendant has agreed to be sentenced under the Sentencing Guidelines, we follow our pre-Booker v.United States, 543 U.S. 220 (2005), practice of adhering to the Guidelines Manual's commentary "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993). The referenced definition of 18 U.S.C. § 1028(d)(4) is currently codified at 18 U.S.C. § 1028(d)(7):

> [T]he term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—
>
>> (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
>>
>> (B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation . . ..

The Commentary also notes that "'Produce' includes manufacture, design, alter, authenticate, duplicate, or assemble." Commentary to § 2B1.1, Application Note 9(A).

We believe that Newsome's admitted activity—assisting in the creation of the fake identification—was within the ambit of U.S.S.G. § 2B1.1(b)(9)(C)(i). It is uncontested that the fraud victims' information—name, date of birth, driver's license number, employee identification number, photograph, etc.—is a "means of identification" under 18 U.S.C. § 1028(d)(7).

Newsome contends, however, that he did not use this means of identification "to produce or obtain *any other* means of identification."  U.S.S.G. § 2B1.1(b)(9)(C)(i) (2003) (emphasis added).  Newsome claims that "means of identification" refers only to a unique name or number, not the document on which it is recorded, as identification documents are separately defined in 18 U.S.C. § 1028(d)(3), which is not incorporated by reference in U.S.S.G. 2B1.1(b)(9)(C)(i).  In support of this point, Newsome cites United States v. Melendrez, which held that "[f]or the purposes of the statute, a means of identification is the identifying name or number of an actual person, not the document on which such name or number is often placed."  389 F.3d 829, 831 (9th Cir. 2004).

Newsome, therefore, claims that taking a misappropriated means of identification—a name or number—and putting it on a new physical document does not trigger the enhancement because the new physical document containing the same means of identification does not constitute another means of identification.  Instead, Newsome argues that what he did was use an existing means of identification to obtain cash, not to obtain a new means of identification, like a social security number or a loan account number.

Newsome contends that the Commentary to the Guidelines makes clear that the enhancement should not apply to him.  The Commentary's Background notes that Congress wanted additional punishment only for those guilty of "breeding" identification—using another individual's name, social security number, or some other form of identification (the "means of identification") to "breed" (i.e., produce or obtain) new or additional forms of identification.  Commentary to U.S.S.G. § 2B1.1, Background.  Newsome argues that he committed plain vanilla identity theft, not breeding, and should not be punished for an aggravated form of the offense.

In support of this claim, Newsome cites Comment 9(C) to the Guidelines, which provides two examples of when the enhancement of 2B1.1(b)(9)(C)(i) applies and two examples of when it does not. In the two examples of when the enhancement applies, the means of identification are used to obtain new identifying numbers–a bank loan number and a credit card number. In the two examples in which the enhancement does not apply, the means of identification are used merely to obtain property. Newsome argues that these examples show that for the enhancement to apply there must a means of identification used to obtain a distinct means of identification, not merely to obtain property.

We disagree. The phrase "any other means of identification" in U.S.S.G. § 2B1.1(b)(9)(C)(i) does not mean "different" as Newsome would read it. Rather, it is a broader phrase meaning "additional" as evinced by the Commentary's definition of "produce" as including "manufacture, design, *alter*, authenticate, *duplicate*, or *assemble*." Commentary to § 2B1.1, Application Note 9(A) (emphasis added). Thus, U.S.S.G. § 2B1.1(b)(9)(C)(i) can be read as requiring the enhancement for "the unauthorized transfer or use of any means of identification unlawfully *to alter or duplicate or assemble* any *alternate hybrid* means of identification." Alteration, duplication, and assembly are precisely what Newsome did when he took an existing means of identification, duplicated it, and assembled it together with a photograph of another person to create an altered "hybrid" means of identification. We note that "means of identification" are defined as "any name or number that may be used, alone *or in conjunction with any other information*, to identify a specific individual." 18 U.S.C. § 1028(d)(7) (emphasis added). The forged driver's license and employer ID had the identity theft victim's correct information. This information by itself constituted a means of identification. When combined with a photograph of Rivera or Daniels it became a different means of identification—still the victim's

-9-

means of identification but the insertion of Rivera's or Daniels' photograph into that means of identification would give Rivera or Daniels access to the victim's assets. When a means of identification is illegally used to produce an altered duplicate means of identification the sentencing enhancement of U.S.S.G. § 2B1.1(b)(9)(C)(i) applies.

Both the legislative history as related in the Guidelines and the Guidelines' examples counsel in favor of meriting the additional punishment. Section 2B1.1(b)(9)(B)(C) implemented section 4 of the Identity Theft and Assumption Deterrence Act of 1998, Pub. L. No. 105-318, 112 Stat. 3007 (1998). The Background provided by the Commentary to Section 2B1.1 notes that subsection (b)(10)(C):

> . . . focuses principally on an aggravated form of identity theft known as "affirmative identity theft" or "breeding", in which a defendant uses another individual's name, social security number, or some other form of identification (the "means of identification") to "breed" (i.e., produce or obtain) *new or additional forms of identification*. Because 18 U.S.C. § 1028(d) broadly defines "means of identification", the new or additional forms of identification can include items such as a *driver's license*, a credit card, or a bank loan. This subsection provides a minimum offense level of level 12, in part because of the seriousness of the offense. The minimum offense level accounts for the fact that the means of identification that were "bred" (i.e., produced or obtained) often are within the defendant's exclusive control, making it difficult for the individual victim to detect that the victim's identity has been "stolen."

Commentary to U.S.S.G. § 2B1.1, Background (emphasis added). Congress wanted to provide increased punishment for identity theft that involved creation of means of counterfeit

-10-

identification rather than the plain vanilla type of identity theft that occurs when person *A* steals and uses person *B*'s credit card. Newsome's offense involved the very type of harm that concerned Congress—production of false means of identification. By changing the original means of identification, Newsome created a new one. Indeed, the means of identification produced by Newsome was a driver's license, a means of identification specifically mentioned in the Background to the Guidelines' Commentary. This multiplication of means of identification is the type of identity theft that Congress believed deserved greater punishment.

Newsome's reliance on the Guidelines' examples is also misplaced. The Guidelines' examples of when the enhancement applies are of little guidance in this case. Newsome attempts to use them as a foil to prove a contrapositive, that is, if *A* then *B*, so if not *A*, then not *B*. We need not elaborate on the fallacy of such logic. It does not follow that because Newsome did not use the forged driver's license and employee identification cards to obtain a new identification number such as a bank loan or credit card number that the enhancement is inapplicable.

Notably, in the two examples in which the enhancement does not apply, the means of identification are used to obtain property *without* alteration or duplication of the means of identification. Newsome's strongest case is the example given in Comment 9(C)(iii)(II), where a signature is forged in order to cash a stolen check. This example, however, may be differentiated from Newsome's activities. A traditional, non-electronic signature is not a "means of identification." Only a name, not the handwriting it is in, may be a "means of identification." On a forged check, the fake signature is in the name of the fraud victim; indeed, it is meant to look like that of the fraud victim. There is no production of a new or altered means of identification. Check forging, like using a stolen

-11-

credit card to make purchases, is a workaday type of identity theft.

By contrast, a fake photograph on a driver's license is meant to alter the means of identification, transforming one means of identification into another hybrid one; this is a sophisticated type of identity theft that has the same aggravating characteristics as those laid out in the Commentary Background. Neither set of examples in the Guidelines deals with the alteration of an existing means of identification to allow it to identify another individual; the examples do not resolve Newsome's case, much less support his argument.

Similarly, the caselaw Newsome cites suffers from the same fallacy as his reliance on the first set of examples in the Guidelines Commentary. Newsome has not identified any caselaw that refused to apply the identity theft enhancement simply because the defendant did not obtain a new identifying number that differed from the source number. Instead, he cites cases in which courts have approved the application of the enhancement when the defendant did obtain a different identifying number.[7]

Finally, we note that even though the hybrid means of identification displayed the pictures of Newsome's co-conspirators, the means of identification produced were of "actual (*i.e.*, not fictitious) individual[s], other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct)." 18 U.S.C. Appx. § 2B1.1. The hybrid products were another means of

---

[7] We do not presently adopt the Ninth Circuit's reading of "means of identification" in Melendrez, 389 F.3d at 831. We leave the question whether "means of identification" can never be a document itself open for another day.

-12-

identification (here a name and number in conjunction with a photograph) from the original ones and were used to identify a real person—the fraud victim whose name and personal information appeared on the documents, albeit with the photograph of one of Newsome's co-conspirators.

By taking a means of identification—the information from the fraud victim's driver's license and employer ID—and combining that information with a photograph of Daniels or Rivera, Newsome produced another means of identification—a means of identification of the victim which, because it bore Daniels' or Rivera's photograph, would give Daniels or Rivera access to the victim's assets. This is precisely the type of behavior for which the sentencing enhancement was intended. Accordingly, we will AFFIRM the judgment of sentence.