# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-2554

———————

United States of America,

      Appellee,

v.

Keith Scott,

      Appellant.

\* Appeal from the United States
\* District Court for the
\* Eastern District of Arkansas.

———————

Submitted: March 15, 2006
Filed: May 26, 2006

———————

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Keith Scott appeals from the sentence imposed by the district court[1] following Scott's plea of guilty to a charge of conspiracy to make and possess counterfeit commercial checks. We affirm.[2]

---

[1]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

[2]Scott's request for release pending appeal is denied.

# I.

Scott pleaded guilty to knowingly and intentionally conspiring with Patrick Wimbley, Willie Donson, Carl Wiley, and others to make and possess counterfeit commercial and business checks to be drawn on purportedly legitimate bank accounts in violation of 18 U.S.C. §§ 371 and 513(a). Wiley, a federal prison inmate, instructed Scott on how to perform the fraudulent scheme. The scheme involved Scott's coconspirators' purchasing legitimate identification cards, social security cards, and payroll checks from numerous individuals to obtain bona fide business names and account numbers. Scott then used his computer to produce counterfeit commercial checks that were printed with those business names and account numbers. The checks were made payable to the individual whose identification document was used. Scott's coconspirators would next open bank accounts using the purchased identification documents and deposit the counterfeit commercial checks or stolen money orders into the account. The coconspirators then began cashing counterfeit commercial checks against the accounts to obtain cash. The proceeds were split between Scott and the coconspirator working on that account. The indictment enumerated twenty-five overt acts of Scott's knowingly making and possessing counterfeit checks, totaling $28,110.97.

At Scott's change of plea proceeding, he acknowledged that there was no agreement with the government as to the amount of loss resulting from the conspiracy. Scott also stated that there was no stipulation regarding sentencing enhancements and that he and the government would defer to the district court's judgment on this matter.

At sentencing, the government argued for a twelve-level sentencing enhancement under § 2B1.1(b)(1)(G) of the guidelines because the conspiracy involved more than $200,000. In support, the government presented evidence of a check register found on Scott's computer, which listed fraudulent checks totaling

more than $200,000. It also offered evidence of codefendant Patrick Wimbley's statement to the authorities that, over the course of the conspiracy, the group had defrauded banks of one million dollars. Further, the government presented testimony that Wimbley's other statements had been corroborated by the authorities.

The government also argued for a four-level enhancement based on Scott's leadership role in the offense pursuant to § 3B1.1 of the guidelines. In support of the enhancement, the government presented the testimony of Detective John Lyon and Secret Service Agent Charles Brisco, both of whom stated that they believed that Scott played a leadership role in the conspiracy. Detective Lyon further stated that "everyone else were the worker bees to go out and do the work, and they are the ones that got put out on the front line in case somebody got caught." Sentencing Tr. at 73. Additionally, the government demonstrated that most of the evidence of the conspiracy—the computer and identification cards—was found in Scott's residence, and that Wiley had written to Scott to instruct him on how to carry out the scheme.

Additionally, the government argued for a two-level obstruction of justice enhancement pursuant to § 3C1.1 of the guidelines because, in support of his challenge to the warrant obtained to search his residence, Scott submitted a false affidavit signed by Wimbley. In this affidavit, Wimbley falsely stated, among other things, that he never told detectives that he would cooperate, that he never said Scott was responsible for making checks, and that he never told detectives that identification cards were in a black backpack in Scott's possession or in his residence or rental car. The government countered Scott's challenge by presenting the recorded interviews of Wimbley, which directly contradicted the statements in the affidavit. In response, Scott promptly withdrew his challenge. At sentencing, in support of the enhancement, the government presented evidence that Wimbley contacted his attorney after his encounter with Scott to inform him that Scott had intimidated him into signing the false affidavit.

Finally, the government argued for a two-level enhancement based on Scott's unauthorized transfer or use of a means of identification to produce or obtain another means of identification pursuant to § 2B1.1(b)(10)(C)(i) of the guidelines. In response, Scott argued that the provision refers to altered identifications and that there was no evidence that the identifications used by Scott were actually alterered; they were instead purchased and used fraudulently.

The district court determined that the fraud involved losses or intended losses of more than $200,000, that Scott was a leader and organizer in the conspiracy, that Scott attempted to obstruct justice, and that Scott transferred or used a means of identification to produce or obtain another means of identification without authorization. It also determined that Scott was entitled to a two-level reduction for acceptance of responsibility. Accordingly, Scott's base offense level of 6 was adjusted to 24. Based on Scott's criminal history category of III, the district court concluded that the applicable sentencing range was sixty-three to seventy-eight months. After considering the factors enumerated in 18 U.S.C. § 3553(a), the district court sentenced Scott to fifty-five months in prison and three years of supervised release. It also ordered restitution in the amount of $34,291.20.

## II.

Scott first argues that the district court erred in enhancing his offense level. We review *de novo* the district court's application of the guidelines and review for clear error its underlying findings of fact. United States v. Noe, 411 F.3d 878, 888 (8th Cir. 2005). We note that under the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence. United States v. Pirani, 406 F.3d 543, 551 n.4 (8th Cir. 2005) (en banc); United States v. Garcia-Gonon, 433 F.3d 587, 593 (8th Cir. 2006).

Scott contends that the district court erred in enhancing his offense level based upon an amount of loss of more than $200,000 instead of the $28,110.97 amount stated in the indictment. Section 2B1.1(b)(1)(G) of the guidelines provides that the amount of loss is generally the greater of the actual or intended loss. U.S.S.G. § 2B1.1, cmt. n.3(A). The district court need make only a reasonable estimate of the loss, and we accord particular deference to the loss determination because of the district court's unique ability to assess the evidence and estimate the loss. U.S.S.G. § 2B1.1, cmt. n.3(C); United States v. Ameri, 412 F.3d 893, 899-900 (8th Cir. 2005). As recounted above, the government presented evidence of a check register found on Scott's computer detailing $200,000 worth of checks created by Scott during the course of the conspiracy, testimony that a codefendant admitted that they had defrauded banks of one million dollars, and evidence that other portions of the codefendant's statement had been corroborated. We conclude that the district court did not err in determining that a preponderance of the evidence supported a finding that $200,000 was a reasonable estimate of actual or intended loss.

Scott next argues that the district court erred in applying an enhancement for Scott's role in the offense pursuant to § 3B1.1 of the guidelines. Scott alleges that this enhancement was inappropriate because there were only four participants in the conspiracy and because he neither directed the actions of his coconspirators nor received a large share of the conspiracy's proceeds. Section 3B1.1 provides that a four-level enhancement is appropriate if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." In assessing whether an organization is otherwise extensive, the district court should consider all persons involved during the course of the conspiracy, including the use of the unknowing services of outsiders. U.S.S.G. § 3B1.1, cmt. n.1, 3. As recounted above, the government presented both a police detective and a Secret Service agent who testified that Scott played a leadership role in the conspiracy. Most of the evidence of the check-fraud scheme was found in Scott's residence, Scott received instructions from a prison inmate on how to perpetrate the fraud, Scott

created the fraudulent checks on his computer, and the detective testified that Scott's coconspirators played the roles of "worker bees" who were on the front line of the conspiracy. Further, there was evidence that the conspiracy utilized the services of many outsiders as the sources of authentic identification documents, and both the Secret Service agent and the police detective testified that the nature of the conspiracy was, in their experience, extensive. In light of this evidence, we conclude that the district court did not err in enhancing Scott's offense level pursuant to § 3B1.1.

Scott also argues that the district court erred in enhancing his offense level for obstruction of justice pursuant to § 3C1.1 of the guidelines. He contends that he should not be punished for exercising his constitutional right to challenge a search warrant and that he did not know that Wimbley had lied in his affidavit. Although a defendant should not be punished for exercising his constitutional right to challenge a search warrant, see U.S.S.G. § 3C1.1, cmt. n.2, an enhancement is appropriate if the defendant threatened a codefendant, suborned or attempted to suborn perjury, produced or attempted to produce a false document, or provided materially false information to a judge or magistrate. U.S.S.G. § 3C1.1, cmt. n.5(a)-(c), (f). The government presented testimony that Wimbley told police officers that Scott had intimidated him into drafting the affidavit and that Scott knew the affidavit was false. Accordingly, the district court did not err in concluding that a preponderance of the evidence supported that an obstruction of justice enhancement was appropriate.

Additionally, Scott argues that the district court erred by enhancing his sentence because of his "unauthorized transfer or use of [a] means of identification unlawfully to produce or obtain [another] means of identification" pursuant to § 2B1.1(b)(10)(C)(i). Scott argues that bank accounts are not a means of identification. A means of identification is "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7); U.S.S.G. § 2B1.1, cmt. n.9(A). The definition includes a unique electronic identification number, address, or routing code. 18 U.S.C. §

1028(d)(7)(C). Examples of conduct under § 2B1.1(b)(10)(C)(i) include a defendant's use of a means of identification to obtain a bank loan or a credit card in the individual's name. U.S.S.G. § 2B1.1, cmt. n.9(C)(ii). The subsection does not apply, however, to a defendant who merely forges another's signature to cash a stolen check or uses a stolen credit card to make a purchase. U.S.S.G. § 2B1.1, cmt. n.9(C)(iii). Because a bank account number is a unique identification number, and because Scott's conduct is more akin to using a means of identification to obtain a bank loan than to merely forging another's signature to cash a stolen check, we conclude that the district court's imposition of a two-level enhancement was appropriate. Cf. United States v. Oates, 427 F.3d 1086, 1089-90 (8th Cir. 2005); United States v. Williams, 355 F.3d 893, 899-900 (6th Cir. 2003).

## III.

Finally, Scott argues that his sentence is unreasonable. We review for abuse of discretion the reasonableness of the sentence imposed by the district court. United States v. Dieken, 432 F.3d 906, 909 (8th Cir. 2006); see also United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006).

A sentence within the guidelines range is presumptively reasonable. United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005). The district court correctly determined the guidelines range to be sixty-three to seventy-eight months and sentenced Scott to fifty-five months in prison. Despite receiving a sentence below the guidelines range, Scott argues that his sentence is unreasonable because his codefendants received lesser sentences and because the district court failed to adequately take into account Scott's asthmatic condition in imposing the sentence. Scott's codefendants, however, were each responsible for a lesser amount of loss in the conspiracy because they split the task of obtaining identification cards and cashing checks and, unlike Scott, they were not determined to be leaders of the conspiracy. Further, we conclude that the district court adequately considered each

of the sentencing factors in 18 U.S.C. § 3553(a) and that Scott has not demonstrated that his asthmatic condition warrants a lesser sentence. In a word, then, the sentence is not unreasonable.

Having reviewed the additional contentions raised in Scott's *pro se* supplemental brief, we conclude that they are without merit and warrant no further discussion.

The judgment is affirmed.

_____