# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3544

_____

United States of America

*Plaintiff - Appellee*

v.

Kenvis Norwood

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 12, 2014
Filed: December 18, 2014
[Published]

_____

Before RILEY, Chief Judge, SMITH and KELLY, Circuit Judges.

_____

PER CURIAM.

Kenvis Norwood appeals from the sentence imposed by the district court[1] for conspiracy to commit bank fraud. Norwood argues that the district court improperly

_____

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

enhanced his sentence for use of sophisticated means and for the unauthorized use of a means of identification to produce or obtain another means of identification. We affirm.

## I. *Background*

Norwood pleaded guilty to one count of knowingly and intentionally conspiring with Exavius Tatum, Joe Javonta Brown, Patrick Julius Giles, Jr., Gregory Jennings, D'Andre Carter, Tyrique Eggleston, Corey Odom, Vincent Mitchell, and William Brandon McCaslin to commit bank fraud in violation of 18 U.S.C. § 1349. The scheme started on October 22, 2011, with the theft of United States mail from approximately 20 businesses in Olathe, Kansas. Shortly thereafter, banks noticed that computer-generated counterfeit checks were being cashed from the very accounts of the businesses that had reported the mail theft. The scheme spread to Leawood, Kansas and Kansas City, Missouri, where further police investigation led to the discovery of the scheme's modus operandi. Two men recruited the homeless to go to banks and cash their computer-generated counterfeit checks.

Norwood became involved with the scheme in May 2012 when he traveled from his home in Atlanta, Georgia to Springfield, Missouri, with his friend and coconspirator Tyrique Eggleston. Eggleston told Norwood about his plan to recruit homeless men to cash counterfeit checks, and he wanted Norwood to accompany and assist him. Norwood agreed. During their stay in Springfield, both Norwood and Eggleston stayed at the same hotel with coconspirators who printed the computer-generated fraudulent checks. On May 2, 2012, Eggleston recruited homeless men to cash checks while Norwood waited in their car. While Eggleston talked, Norwood mostly acted as security so Eggleston would not be threatened by the homeless men that were recruited. When recruiting these men, Eggleston and Norwood would ask for each person's government-issued identification card so that the fraudulent checks could be printed using that person's legal name. Eventually, the Springfield Police Department arrested Eggleston and Norwood. The pair had successfully cashed four

checks totaling $12,321.79, and two uncashed checks for an additional $4,163.87 were found in their vehicle.

At the sentencing hearing, the district court first considered the two-level enhancement for use of sophisticated means as called for in the presentence investigation report (PSR) prepared by the United States Probation Office to assist with sentencing. The government offered no additional evidence at the hearing. The court believed that none was needed stating, "I don't think we need to have any evidence on [sophisticated means]. You [Norwood] agree to the facts basically; right? . . . I don't think we need any." Neither party objected to the facts giving rise to the enhancement. After deciding that the sophisticated-means sentencing enhancement should apply, the court moved on to the two-level enhancement for the unauthorized use of a means of identification to produce or obtain another means of identification. As before, the parties did not dispute the facts, so the government did not produce any evidence pertaining to this enhancement. Further, both sides declined oral argument on the application of this enhancement. Based on the uncontested facts of the case, the court applied the two-level means-of-identification enhancement to Norwood's total offense level.

Norwood appeals, arguing that the district court improperly applied both sentencing enhancements because Norwood had only limited knowledge and participation in the conspiracy. Given his limited involvement, he argues that he should not be held responsible for the actions of the entire conspiracy since they were not foreseeable. Further, Norwood contests the sufficiency of the evidence used to establish the predicate facts for both enhancements.

## II. *Discussion*
### A. *Application of Sentencing Enhancements*
Norwood first argues that his limited involvement in the conspiracy made it impossible for him to foresee the full extent of the fraudulent scheme; as a result, he

contends that the district court erred by holding him accountable for the losses caused by the conspiracy. We review the district court's application of the Guidelines and imposition of sentencing enhancements de novo. *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006) (citing *United States v. Noe*, 411 F.3d 878, 888 (8th Cir. 2005)). We also note that "sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *Id.* (citing *United States v. Pirani*, 406 F.3d 543, 551 n.4 (8th Cir. 2005) (en banc)). We review factual findings at sentencing for clear error. *United States v. Finck*, 407 F.3d 908, 913 (8th Cir. 2005) (citing *United States v. Hart*, 324 F.3d 575, 579 (8th Cir. 2003)).

## 1. *Sophisticated Means*

Sophisticated means is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1(b)(10)(C), cmt. n.9(B). "'Even if any single step is not complicated, repetitive and coordinated conduct can amount to a sophisticated scheme.'" *United States v. Huston*, 744 F.3d 589, 591–92 (8th Cir. 2014) (quoting *United States v. Fiorito*, 640 F.3d 338, 351 (8th Cir. 2011)). "We review the factual finding of whether a . . . scheme qualifies as 'sophisticated' for clear error." *Id.* at 592 (alteration in original) (quoting *United States v. Brooks*, 174 F.3d 950, 958 (8th Cir. 1999)).

"Sophisticated means" need not be highly sophisticated. The application of "[t]he sophisticated-means enhancement is proper when the offense conduct, viewed as a whole, 'was notably more intricate than that of the garden-variety [offense].'" *United States v. Jenkins*, 578 F.3d 745, 751 (8th Cir. 2009) (alteration in original) (quoting *United States v. Hance*, 501 F.3d 900, 909 (8th Cir. 2007)); *see, e.g.*, *Finck*, 407 F.3d at 911–12, 915 (finding the sophisticated-means enhancement was appropriately applied where the defendant "engaged in a repetitive and coordinated scheme to obtain vehicles" by calling or faxing a company that money to purchase vehicles had been wired into its bank account); *United States v. Anderson*, 349 F.3d 568, 570–71 (8th Cir. 2003) (holding the sophisticated-means enhancement was

-4-

appropriately applied in a ponzi scheme where the defendant tried to conceal his fraud by telling his victims that the shares they bought in the defendant's sham company would be compensated with worthless bonds of another sham company).

Here, the district court's findings of fact were not clearly erroneous: Norwood knowingly accompanied Eggleston to recruit homeless men, helped Eggleston obtain these men's government-issued identification cards, had knowledge that these identification cards were being used by coconspirators to print fraudulent checks at the hotel where he stayed, and then gave these checks to the homeless men to cash. Reviewing the application of the sentencing enhancement de novo, we determine that Norwood's actions and knowledge of the conspiracy, despite their limits, rise to the level of complexity sufficient to justify the application of the sophisticated-means enhancement. The scheme Norwood participated in exceeds the "garden-variety" scheme to commit bank fraud. Even the limited part of the scheme involving Norwood required recruiting others so as to avoid detection, using government-issued identification cards, and using this identification to create computer-generated checks.

2. *The Unauthorized Transfer or Use of Any Means of Identification Unlawfully to Produce or Obtain Any Other Means of Identification*

Norwood also contends that the district court erred by enhancing his sentence for the "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." U.S.S.G. § 2B1.1(b)(11)(C)(i). The means-of-identification enhancement was originally designed to combat the harm "which results from using someone's identifying information to establish new credit." *United States v. Williams*, 355 F.3d 893, 900 (6th Cir. 2003). According to examples in the Guidelines, application is appropriate when a defendant uses "a means of identification to obtain a bank loan or a credit card in the individual's name. The [enhancement] does not apply, however, to a defendant who merely forges another's signature to cash a stolen check or uses a stolen credit card to make a purchase." *Scott*, 448 F.3d at 1045 (citing U.S.S.G. § 2B1.1, cmt. n.9(C)(ii)–(iii)).

According to Norwood, he never produced or obtained another means of identification as required by the enhancement, even taking into account his coconspirators' acts. While Norwood concedes that he used a means of identification by obtaining the government-issued identification cards from the homeless men that were recruited, he denies that reprinting their names on counterfeit checks amounts to producing another means of identification.

The term "'means of identification' has the meaning given that term in 18 U.S.C. § 1028(d)(7)," U.S.S.G. § 2B1.1, cmt. n.1, which in turn defines the term as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). It is not readily apparent if a computer-generated check that has a bank's routing number, a business's bank account number, and a homeless man's name qualifies as such a "means of identification."

Our most analogous application of the means-of-identification sentencing enhancement was in *United States v. Scott*. In *Scott*, the defendant's coconspirators bought individuals' identification cards, social security cards, and payroll checks, and obtained legitimate business names and account numbers. *Scott*, 448 F.3d at 1042. The defendant used these means of identification to create computer-generated counterfeit checks with the business account information made payable to the individuals whose identifying information was sold to the coconspirators. *Id.* The coconspirators then opened up accounts in the individuals' names and started depositing and cashing the counterfeit checks to obtain cash. *Id.* We upheld the imposition of the means-of-identification sentencing enhancement because

> a bank account number is a unique identification number, and because Scott's conduct is more akin to using a means of identification to obtain a bank loan than to merely forg[e] another's signature to cash a stolen check, we conclude that the district court's imposition of a two-level enhancement was appropriate.

*Id.* at 1045 (citing *United States v. Oates*, 427 F.3d 1086, 1089–90 (8th Cir. 2005); *Williams*, 355 F.3d at 899–900). Our decision in *Scott*, thus, was based on the finding that the coconspirators' creation of bank accounts in the names of the individuals whose identifications were obtained constituted a new means of identification. The district court made no such finding in this case.

Looking to our sister circuits, we agree with the Third Circuit's analysis and holding in *United States v. Newsome*, 439 F.3d 181 (3d. Cir. 2006), concluding that duplicating a means of identification onto another medium satisfies the sentencing enhancement where that duplication enables an altered or hybrid means of identification or false identification. In *Newsome*, conspirators obtained the personal and banking information of customers at a bank, and used this information to create driver's licenses with the customers' information, but the picture of a conspirator. *Id.* at 183. The conspirators would then make withdrawals from the bank, presenting the false driver's license to establish their faux identity. *Id.* The defendant argued that the means-of-identification enhancement should not apply because he merely took the customers' information and transferred it to false driver's licenses; thus, he did not create or produce a "new" means of identification such as a bank account number, but only duplicated the same information in another form. *Id.* at 184–85. The Third Circuit disagreed, stating that "[t]he phrase 'any other means of identification' . . . does not mean 'different' as [the defendant] would read it. Rather, it is a broader phrase meaning 'additional' as evinced by the Commentary's definition of 'produce' as including 'manufacture, design, *alter*, authenticate, *duplicate*, or assemble.'" *Id.* at 185 (emphasis in original) (quoting U.S.S.G. § 2B1.1, cmt. n.9(A) (2006) (current version at U.S.S.G. § 2B1.1, cmt. n.10(A) (2013)). Given that the sentencing enhancement contemplates the "[a]lteration, duplication, and assembly" of "means of identification," the Third Circuit found that the defendant's actions of copying customers' information onto a new medium, a fake driver's license, fell within the intent of the enhancement. *Id.* at 185–86.

Norwood's argument mirrors the defendant's failed argument in *Newsome*, contending that the mere copying of real bank account numbers and routing numbers of businesses and banks respectively onto computer-generated checks is not producing or creating a means of identification. We read the Guidelines's definition of "produce" to include duplicating a means of identification such as a bank account number and transferring it onto a new medium, such as a counterfeit check. While the district court reached the same conclusion for different reasons, we need not remand the case, but affirm based on our analysis.[2]

B. *Sufficiency of the Evidence*

Norwood also argues that the government failed to present sufficient evidence to support the sentencing enhancement's application. "'*If the defendant objects to any of the factual allegations contained [in the PSR]* . . . , the government must present evidence at the sentencing hearing to prove the existence of the disputed facts.'" *United States v. Hartstein*, 500 F.3d 790, 796 (8th Cir. 2007) (alteration in original) (emphasis added) (quoting *United States v. Jenners*, 473 F.3d 894, 897–98 (8th Cir. 2007)). Norwood is correct that evidence is required to prove the factual allegations supporting a sentencing enhancement. However, the factual allegations already contained in the record before the district court are uncontested. If those facts justify the enhancement, no additional evidence is required. The government need not present evidence to establish facts that Norwood has already conceded. *See, e.g.*, *Huston*, 744 F.3d at 591–92 (upholding an application of the sophisticated-means

_____

[2]Additionally, the means-of-identification enhancement applies when, as in Norwood's case, counterfeit checks are printed with existing bank account and routing information because the check itself would qualify as another means of identification. Other circuits have so concluded. *See United States v. Alexander*, 725 F.3d 1117, 1119–20 (9th Cir. 2013) (finding that the plain language of § 1028(d)(7) includes a counterfeit check with an individual's name, bank account number, and bank routing number as a means of identification). We agree with our sister circuits that such a check is within the statutory meaning of 18 U.S.C. § 1028(d)(7).

enhancement even though "[n]o party submitted evidence on this issue at either sentencing hearing").

## III. *Conclusion*

For the foregoing reasons, we affirm the district court's imposition of both the sophisticated-means and means-of-identification sentencing enhancements. Additionally, the district court did not err by imposing these enhancements without hearing evidence on the issues because the material facts were undisputed.

————————————————