# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 16-2859

———————————————

United States of America

*Plaintiff - Appellee*

v.

Norman Bernard Weaver

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: April 3, 2017
Filed: August 7, 2017

——————————

Before WOLLMAN, LOKEN, and RILEY, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Norman Bernard Weaver pleaded guilty to conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344 and 1349. The district court[1] overruled Weaver's objection to a two-level enhancement under U.S.S.G. § 2B1.1(b)(11)(C)(i), resulting

———————————

[1]The Honorable David Gregory Kays, Chief Judge of the United States District Court for the Western District of Missouri.

in an advisory guidelines sentencing range of 33 to 41 months in prison.  The court varied upward and sentenced Weaver to 96 months, expressly stating that "no matter how these guidelines would have come out, I still get to the same place under the 18 U.S.C. 3553(a) factors."  Weaver appeals his sentence, arguing the district court procedurally erred in imposing the § 2B1.1(b)(11) enhancement and the sentence is substantively unreasonable.  We affirm.

### I. The § 2B1.1(b)(11)(C)(i) "Means of Identification" Enhancement.

For approximately ten years, several "crews" operating in various parts of the country stole business mail that included business checks.  Using bank account numbers, bank routing numbers, and authorized payor signatures appearing on the stolen checks, the conspirators created counterfeit checks payable to homeless persons who were recruited to pass the bogus checks at local banks.  From December 2012 to March 2013, Weaver was the leader of a crew that manufactured computer-generated counterfeit checks and recruited homeless persons to cash the checks at local banks in Kansas City, Missouri and Lincoln, Nebraska, using the payee's personal identification.  See United States v. Norwood, 774 F.3d 476, 478-79 (8th Cir. 2014).  The issue is whether this scheme involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification."  U.S.S.G. § 2B1.1(b)(11)(C)(i).

The Sentencing Commission adopted the § 2B1.1(b)(11)(C)(i) enhancement in response to a congressional directive in § 4 of the Identity Theft and Assumption Deterrence Act of 1998, Pub. L. 105-318.  See U.S.S.G. App. C., Amend. 596.  "This subsection focuses principally on an aggravated form of identity theft known as 'affirmative identity theft' or 'breeding,' in which a defendant uses another individual's name, social security number, or some other form of identification (the 'means of identification') to 'breed' (*i.e.*, produce or obtain) new or additional forms

of identification . . . making it difficult for the individual victim to detect that the victim's identity has been 'stolen.'" § 2B1.1, comment. (backg'd.).

Section 2B1.1(b)(11)(C)(i) applies to "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." "'Means of identification' has the meaning given that term in 18 U.S.C. § 1028(d)(7), except that such means of identification shall be of an actual (*i.e.*, not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable." § 2B1.1, comment. (n.1).[2] "'Produce'" includes manufacture, design, alter, authenticate, duplicate, or assemble." Id. at comment. (n.10(A)). The enhancement does not apply if the defendant merely uses a stolen credit card to make a purchase, or forges a person's signature to cash a stolen check. Id. at comment. (n.10(C)(iii)). No "breeding" is involved in those offenses.

Weaver raises a narrow interpretive issue on appeal. In Norwood, which involved the same scheme, we rejected defendant's contention that the conspirators did not use a means of identification to produce another means of identification. We upheld the § 2B1.(b)(11)(C)(i) enhancement, concluding that "produce" "include[s] duplicating a means of identification such as a bank account number and transferring it onto a new medium, such as a counterfeit check." Norwood, 774 F.3d at 482; accord United States v. Newsome, 439 F.3d 181, 185 (3d Cir. 2006). We agreed with other circuits that a counterfeit check with an individual's name, bank account number, and bank routing number is a "means of identification" within the meaning of 18 U.S.C. § 1028(d)(7). See Norwood, 774 F.3d at 482 n.2; accord United States v. Alexander, 725 F.3d 1117, 1120 (9th Cir. 2013). Weaver argues that Norwood is not controlling in this case because the guidelines commentary states that a means of

_____

[2] Section 1028(d)(7) broadly provides that "the term 'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," then listing several examples.

-3-

identification used to produce another means of identification must be that of "an actual individual." Here, Weaver and his coconspirators transferred the bank account and bank routing numbers from a "fictitious business entity," not an "individual."

We agree that our opinion in Norwood did not address this contention, but we nonetheless reject it. The means of identification that Weaver and his co-conspirators stole included not only the bank account and routing numbers of business bank accounts; it also included the authorized "individual payor's signature," a means of identification that was essential to creating a counterfeit check that could be cashed by the homeless person payee. These account signatories "are natural persons and were victims of the identity theft." United States v. Barnette, 2015 WL 3879875, at *5 (W.D. Va. Jun. 23, 2015); accord United States v. Williams, 553 F. App'x 516, 518 (6th Cir.), cert. denied, 134 S. Ct. 2713 (2014); United States v. Johnson, 261 F. App'x 611, 613-14 (4th Cir. 2008). Though cashing a counterfeit business check does not steal the signatory's personal assets, the signatory is a victim of the crime. He or she is likely to suffer embarrassment, loss of stature in the enterprise, and may even be liable for the loss. Thus, Weaver's offense involved "affirmative identity theft or breeding" -- not just forging a signature to cash a stolen check -- and his victims included individual signatories whose means of identification (their names) were used to produce another means of identification (counterfeit checks). The district court did not err in imposing the two-level § 2B1.1(b)(11)(C)(i) enhancement.

In his Reply Brief, Weaver argues that the government failed to prove "that the payor signature on each of the checks was the fake signature of a real person." Even if timely raised on appeal, this issue was not properly preserved. The Presentence Investigation Report stated that the conspirators "scanned the authorized signatures on the face of the checks to make them appear authentic," and that the criminal scheme involved "the unauthorized transfer of . . . scanned authorized signatures to produce other means of identification (counterfeit checks)." Though Weaver objected to the § 2B1.1(b)(11)(C)(i) enhancement, he did not object to those fact statements.

## II. The Sentence Is Not Substantively Unreasonable.

At sentencing, the district court carefully explained that it considered all the § 3553(a) sentencing factors and imposed a substantial upward variance based on the offense conduct; Weaver's under-represented criminal history ("You're the first category I criminal history I've ever met that has two felonies as a juvenile, six felonies as an adult."); and the need to promote effective deterrence by imposing a greater sentence than the 87-month sentence Weaver received for a 1991 drug and firearm offense. Weaver argues the 8-level upward variance was substantively unreasonable because the court failed to adequately consider the guidelines range, gave too much weight to his criminal history, and failed to consider Sentencing Commission reports noting that offenders like Weaver who are 51 years old have lower recidivism rates. "A district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others." United States v. Lasley, 832 F.3d 910, 914 (8th Cir. 2016) (quotation omitted), cert. denied, 137 S. Ct. 823 (2017). The district court carefully explained why it concluded that an upward variance was warranted. There was no abuse of the court's substantial sentencing discretion.

The judgment of the district court is affirmed.

_____