# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1081
_____

United States of America

*Plaintiff - Appellee*

v.

Bree Deontez Wright

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: March 13, 2020
Filed: May 5, 2020
_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Bree Deontez Wright pled guilty to sex trafficking of a child, in violation of 18 U.S.C. § 1591(a)(1). The district court[1] imposed a 151-month sentence and

_____

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

restitution in the amount of $20,000. Wright appeals the restitution order and certain special conditions of his supervised release. We affirm.

## I.     Background

In April 2018, Wright was being held in the Polk County Jail on unrelated charges. Over recorded jail calls, Wright spoke with Linsey Bradford, who bragged about selling females for sex. Wright told Bradford to contact Kayla Scott, the mother of Wright's children, who would facilitate the sex trafficking of a 17- year-old Minor Victim (MV) while Wright was in custody. Scott would provide MV to Bradford, so Bradford could provide MV to a sex buyer. Wright directed Bradford to deposit proceeds from the sex act into his jail account. Several days later, in another recorded conversation, Bradford reported to Wright that she had deposited $50 into Wright's jail account after MV performed sex for money. Jail records confirmed the deposit.

On May 2, 2018, with the help of a confidential source (CS), federal agents arrested Wright as part of a sting operation at a hotel in Altoona, Iowa. Wright corresponded with the CS and drove MV to the hotel to solicit sex acts with an undercover agent. Wright was charged in a one-count indictment with sex trafficking of a child, in violation of 18 U.S.C. § 1591(a)(1). Wright pled guilty without a plea agreement.

MV testified at the sentencing hearing that she met Wright through Scott in the summer of 2017, when she was 16 years old. Wright and MV began a sexual relationship, and Wright knew that she was a teenager. In approximately November 2017, Wright asked MV if she would start prostituting. Wright set up "dates" for MV, usually at a hotel, and sometimes Wright would drive her to the dates. The clients paid between $80 and $400 for sex with MV, and MV gave one-third of the money to Wright "when he needed it." Most weeks, Wright arranged daily dates for

MV, and up to 10 dates each day, until Wright went to jail in April 2018. Sometimes, MV arranged her own dates without telling Wright. Before her relationship with Wright, MV regularly attended school. Once she entered into her relationship with Wright, however, MV's performance spiraled out of control. She started skipping school, began losing friends, and got into fights. Predictably, her grades suffered. This testimony corroborated an earlier statement MV had given to the FBI during the course of the investigation.

Wright faced a mandatory minimum 120-month imprisonment term under § 1591(b)(2), and mandatory restitution under § 1593(a). The district court imposed 151 months' imprisonment, 10 years of supervised release, and $20,000 in restitution. In calculating the amount of restitution, the district court considered the amount and frequency of MV's dates, and further stated: "The restitution here is not just for money that he made by being a pimp but also the harm exceeded the money that he took from her. It's very difficult to estimate the harm, but it's certainly a reasonable estimate of it." The district court also imposed special conditions of supervised release, including sex offender treatment, a prohibition against contact with minors without prior approval, and a requirement that Wright seek pre-approval before using temporary commercial lodging, such as a hotel or motel. Wright filed a timely notice of appeal, challenging the amount of restitution and some of his conditions of supervised release.

## II. Discussion

### A. Restitution Order

Wright does not dispute that restitution was appropriate; rather, he argues the evidence was insufficient to support the amount of $20,000. "We review for clear error the amount of restitution ordered." United States v. Simon, 376 F.3d 806, 809 (8th Cir. 2004). "The government bears the burden of proving the amount of

restitution based on a preponderance of the evidence." United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011).

"[W]e take a broad view of what conduct and related loss amounts can be included in calculating loss." United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007). The district court "need make only a reasonable estimate of the loss, and we accord particular deference to the loss determination because of the district court's unique ability to assess the evidence and estimate the loss." Id. at 895 (quoting United States v. Scott, 448 F.3d 1040, 1044 (8th Cir. 2006)). The district court is required to order "the full amount of the victim's losses," which may include a range of costs and losses borne by the victim, and "the greater of the gross income or value to the defendant of the victim's services or labor . . . ." 18 U.S.C. §§ 1593(b)(1), (b)(3), and 2259(c)(2).

Wright believes the evidence is insufficient to determine how many weeks MV worked for him, how many days she worked during those weeks, how many dates she had each day, whether she collected closer to $80 or $400 during each date, or when she arranged her own dates without telling Wright. He argues that, even assuming MV worked for Wright every day from November 1, 2017, to April 1, 2018 (a period of 151 days), MV was required to give Wright $132.45 each day, or approximately $1,000 each week, to support the restitution amount.

We find no error in the district court's estimation. The evidence in the record supports the restitution amount of $20,000. MV testified that she made up to $400 for each date, "mostly" every day, and sometimes "up to 10 times each day." Other evidence indicated that MV worked for Wright seven days a week. Moreover, the district court appeared to consider the aggregate harm to MV, which may include future losses or "any other relevant losses" borne by MV. See 18 U.S.C. § 2259(c)(2)(F); Paroline v. United States, 572 U.S. 434, 445–46 (2014) (restitution is proper under § 2259 to the extent the defendant's offense proximately caused a

-4-

victim's losses). Restitution in the amount of $20,000 was reasonable in light of the record, and we will not disturb the order on clear error review.

B.    Special Conditions of Supervised Release

We review the imposition of special conditions of supervised release over defendant's objection for abuse of discretion. United States v. Thompson, 653 F.3d 688, 691 (8th Cir. 2011). "District courts have broad discretion to impose special conditions, provided that each condition '1) is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a); 2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and 3) is consistent with any pertinent policy statements issued by the Sentencing Commission.'" United States v. Godfrey, 863 F.3d 1088, 1101 (8th Cir. 2017) (quoting United States v. Woodall, 782 F.3d 383, 385–86 (8th Cir. 2015) (per curiam)). "When crafting a special condition of supervised release, the district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." United States v. Wiedower, 634 F.3d 490, 493 (8th Cir. 2011) (internal quotations omitted).

The special conditions imposed by the district court included, in part, a requirement for Wright to participate in sex offender treatment including psychological testing and polygraph examinations, a prohibition against contact with any minors without pre-approval, and a requirement that Wright seek prior approval before using temporary commercial lodging, such as a hotel or motel. The district court explained that these special conditions were "certainly reasonably related" to both the offense of conviction and to Wright's history of sexual contact with minor females. Wright argues the conditions involve a "greater deprivation of liberty than is reasonably necessary" to deter criminal conduct. 18 U.S.C. § 3583(d)(2).

Where, as here, the defendant has been convicted under § 1591, the Guidelines Manual specifically recommends a special condition "requiring the defendant to participate in a program approved by the [probation office] for the treatment and monitoring of sex offenders." U.S.S.G. § 5D1.3(d)(7)(A). The requirement for sex offender treatment as directed by the probation office was not an abuse of discretion. See United States v. Puckett, 929 F.3d 1004 (8th Cir. 2019) (per curiam).

Wright also objects to the condition prohibiting him from having unapproved contact with minors. He asserts that a prohibition against contact with unrelated females aged 14–17 would be more appropriate, because the current condition denies him any contact with his own children. Such restrictions require closer scrutiny. Id. at 1007; United States v. Hobbs, 710 F.3d 850, 853–54 (8th Cir. 2013).

It is significant that Wright is not barred from contact with his children, he is only required to have pre-approval. While we acknowledge such a condition is a burden, the offense of conviction was sex trafficking of a child, and Wright admits that he was a "pimp" for MV, who was 16 or 17 years old at the time of the criminal conduct. The record also shows that Wright had a relationship with a different 15-year-old female, with whom he fathered a child in October 2017, and paternity was confirmed by Iowa state testing authorities. In light of the offense of conviction, Wright's history of sexual contact with underage females, and his ability to seek prior approval for contact with his own children, the special condition was not an abuse of discretion. United States v. Crume, 422 F.3d 728, 734 (8th Cir. 2005) (upholding no-contact special condition where the minor children were conceived by sexual conduct with minors and restriction permitted contact with approval). See also United States v. Simons, 614 F.3d 475, 481–82 (8th Cir. 2010) (explaining the history of the special condition prohibiting contact with minors, and emphasizing that history of sexual conduct with a minor is a valid basis).

Finally, Wright challenges the special condition prohibiting use of temporary commercial lodging without prior approval. Wright was arrested outside of a hotel, after he delivered MV to the hotel so that she could perform sex acts with an undercover agent. MV testified that most of the dates arranged by Wright occurred at hotels. Once again, the complained of condition is not an absolute bar. If Wright needs to stay at a hotel or motel, he may seek approval from his supervising probation officer. The special condition is reasonably related to Wright's criminal conduct and not too restrictive. The district court did not abuse its discretion.

## III. Decision

The judgment of the district court is affirmed.

_____