**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1541
_____

UNITED STATES OF AMERICA

v.

MAURICE MCCORKLE,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-19-cr-00710-001)
U.S. District Judge: Honorable Paul S. Diamond
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 4, 2024
_____

Before:  SHWARTZ, RENDELL, and AMBRO, <u>Circuit Judges</u>.

(Filed:  March 5, 2024)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SHWARTZ**, Circuit Judge.

Maurice McCorkle appeals his sentence for conspiracy to commit access device fraud and identity theft. For the following reasons, we will affirm.

I

McCorkle participated in an identity theft scheme in which his co-conspirators fraudulently opened retail credit card accounts using victims' stolen personal identifying information. Some conspirators then added themselves as "additional users" of the fraudulently obtained cards, and McCorkle drove them to stores, where they used the cards to make unauthorized purchases. App. 36. A grand jury returned a one-count indictment, charging him with conspiracy to commit access device fraud and identity theft, in violation of 18 U.S.C. § 371.

At his plea hearing, the Government explained that McCorkle admitted to driving two of his co-conspirators to stores "and that he knew he was transporting [them] to make unauthorized purchases using fraudulently obtained personal identifying information of victims[.]" App. 40. McCorkle confirmed that the Government "accurately describe[d] what [he] did" and did not "get anything at all incorrect or wrong[.]" App. 40. He then pleaded guilty.

The pre-sentence report ("PSR") recommended a total offense level of twelve, which included a two-level enhancement for "the . . . use of any means of identification unlawfully to . . . obtain any other means of identification" under U.S.S.G. § 2B1.1(b)(11)(C)(i). Given McCorkle's criminal history category of VI, this resulted in a Sentencing Guidelines range of thirty to thirty-seven months' imprisonment. At

sentencing, the District Court overruled his objections to the enhancement, adopted the PSR's proposed offense level, and imposed a sentence of thirty-six months' imprisonment.

McCorkle appeals.

## II[1]

The sole question before us is whether the District Court erred in applying the two-level enhancement under § 2B1.1(b)(11)(C)(i). The enhancement applies for "use of any means of identification unlawfully to . . . obtain any other means of identification." U.S.S.G. § 2B1.1(b)(11)(C)(i); see United States v. Newsome, 439 F.3d 181, 182-83 (3d Cir. 2006) (affirming application of the enhancement where the defendants unlawfully obtained customers' personal information and used it to produce driver's licenses with the victims' information and the defendants' photographs). The enhancement does not, however, apply to "the plain vanilla type of identity theft that occurs when person A steals and uses person B's credit card[.]" Newsome, 439 F.3d at 186 (italics omitted).

To determine whether the enhancement applies here, we consider all relevant conduct, including conduct that is "within the scope of," "in furtherance of," and "reasonably foreseeable in connection with" the credit card fraud conspiracy. U.S.S.G. § 1B1.3(a)(1)(B); see United States v. Collado, 975 F.2d 985, 995 (3d Cir. 1992)

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

We review a district court's "application of the Guidelines to facts for abuse of discretion and its factual findings for clear error." United States v. Thung Van Huynh, 884 F.3d 160, 165 (3d Cir. 2018) (internal quotation marks and citation omitted).

(explaining that in applying § 1B1.3, the court must conduct an "individualized inquiry into the circumstances surrounding [a] defendant's involvement in the conspiracy").

Here, McCorkle's co-conspirators did not simply steal credit cards and use them. Rather, they used stolen personal information to obtained new credit cards, thereby creating other means of identification to make their fraudulent purchases.[2]  Accordingly, the scheme is not of the "vanilla" variety (i.e., person A stealing and using person B's credit card) described in Newsome.  439 F.3d at 186.

To the extent McCorkle contends that he did not know that his co-conspirators created new means of identification and that their doing so was not foreseeable to him, his argument fails.  During the plea hearing, McCorkle admitted not only to driving his co-conspirators to stores so that they could commit fraud, but also to knowing that they would "make unauthorized purchases [using] fraudulently obtained personal identification information of victims[,]" App. 39, which information was used to "fraudulently open[] . . . [c]redit account[s]," App. 38.  By asking McCorkle to confirm these activities, the District Court adequately inquired into hi's knowledge and conduct, and the record provides a basis to conclude that his conduct and that of his co-conspirators (1) fell within the scope of, (2) furthered, and (3) was "reasonably

---

[2] That some conspirators added their true identities to obtain additional cards on the fraudulently established accounts does not render the enhancement inapplicable.  At bottom, these conspirators still obtained the cards, which are a means of identification, on accounts opened using victims' stolen personal identifying information.

foreseeable in connection with," the credit card fraud conspiracy.  U.S.S.G. § 1B1.3(a)(1)(B).

## III.

For the foregoing reasons, we will affirm.